## WARNER *v.* HOFFMAN.

Where a complainant claims to make the remainder in fee of an estate, vested in infants, liable for a debt accruing for professional services performed in relation to the rights of the father and mother in such estate, it is necessary, for his success, that he should affirmatively show the debt in question was contracted for the preservation of the inheritance of the children or for its permanent improvement. And where this is not shown on the hearing, the court will not indulge him with a reference to a master to inquire how far his services contributed to preserve and benefit the inheritance so that a portion, at least, of the debt might be charged thereon.

In a creditor's suit, although there may have been a decree, the neglect or omission of one will not preclude his right to be afterwards let in, provided the other creditors are placed in no worse position or put to additional expense.

A REFERENCE is necessary to the case of *Dyett and wife* v. *The North American Coal Company,* 7 Paige's C. R. 9 and 20 Wendell's R. 570, for a statement of the facts out of which this suit arose.

The complainant, Mr. Henry W. Warner, had a claim of considerable amount for professional services ; which, it was alleged, were rendered by him mainly for the preservation of the inheritance of the Dyett estate as well as for the protection of Mr. and Mrs. Dyett's interests as *cestuis que trust ;* and, consequently, that he was entitled to a decree which should reach the inheritance or fee of the property and subject it to a sale for his benefit. This was a principal object of the bill in the present suit. The infant children of Mr. and Mrs. Dyett were entitled to the remainder in fee ; and defended through their guardian *ad litem.* It will be seen, in the opinion of the court, that the complainant had leave to file the present bill.

Mr. *Henry W. Warner,* complainant in person. The priority obtained by creditors is a mere casualty and can give no advantage over him. The court will relieve against accident and mistake. The decree there is objectionable in itself, as well as by the means it was obtained. It was a

*April 3
and
May 1,
1844.*

*Debtor and
Creditor.
Heir.
Reference:*

general creditor's bill. All creditors were to fare alike; and yet some are postponed. But the counsel now arguing does not know he has any need to complain of that: it cannot affect him. He does, however, complain of the proceedings which led to that decree. He was not a party and yet is affected by it. Debts were allowed which ought not to have been. These absorb the rents and shut him out or diminish his chances. Master Mason went through the reference in one day. The bill alleges no proofs were taken; and the answer does not deny it. All was done by consent. The complainant was a co-trustee and was never consulted about the propriety of advances embraced by the master's report. The fee of the estate belonged to the children and yet their estate is made to bear the burthen of supporting the parents. If this complainant was not bound to be a party to that reference, then he is now at liberty to controvert those allowances: *Pratt* v. *Rathbone*, 7 Paige's C. R. 269; and he insists that he was not bound to go into that reference with his demand, because most of his demand accrued before 1827, the period fixed. Even if a small part only was prior to that, he was not bound to submit to a loss of that, by going in to prove. But his claim is a legal one against the trust estate directly. The others were against Dyett primarily and secondarily only against the trust estate: Story's Eq. Pl. 104; *Parmalee* v. *Egan*, 7 Paige's C. R. 610.

The case of *Pickford* v. *Hunter*, 5 Sim. R. 122 is in point and the difference in favor of the present case is much stronger. The rule is that a party cannot come in whose debt does not stand on as good grounds as others; and if he stands on better grounds he is not bound to come in. He is not bound to make a sacrifice of any thing. Here the debt is a legal and also an equitable one. Other's debts were equitable only. A legal claim is one in judgment, to be followed by an execution against the *corpus*. The complainant's services saved both the fee and the life estate in reversing the chancellor's decree in the Chapman suit, which would have swept it off. His right would give him an execution against the fee, subject to the life estate; and if that were insufficient, then against the life estate. In this way let it be marshalled.

Mr. *Murray Hoffman*, defendant in *pro. per.* In all the litigation about this unfortunate trust estate, this is the first attempt to reach the capital of it. This capital, now vested in the infant children, is sought to be affected. The mother is now reduced to beggary ; and the question is, whether the children are to share the misfortunes of their mother. The complainant's services have been great and meritorious; but, like other creditors, he may have to remain unpaid. A plausible appearance of right is not enough. He must bring his case clearly and fully within the rules in like cases or he cannot recover. He must hit the bird in the eye. Date must be attended to. The first bill was filed the fifteenth of August, 1834. The bill of the coal company, as amended, was filed in October 1833, making it a general creditor's bill. The order of reference in the complainant's suit was on the thirteenth of October, 1834 and on the sixteenth day of September 1836, master Clark made his first report. In January 1837, exceptions to it were heard. The second order of reference back was on the eighth day of June 1839. On the twenty-eighth day of June 1839, the master made an amended report. The order of reference in the coal company suit was on the twelfth day of February 1839. The master's advertisement appointed the thirteenth day of May 1839, for creditors to come in. His report is dated May 15, 1839. The chancellor's decree was made on appeal from the vice-chancellor the eleventh of September 1839 and the affirmance by the court for the correction of errors the twelfth of February, 1839. The complainant's present bill was filed the eighteenth day of October 1841 and the answers were put in a year or more afterwards.

As to the claim against the capital or estate in remainder of the children. The complainant's original bill, August, 1834, sets forth the marriage settlement and his claim for services rendered to the estate and to Joshua Dyett. The frame of it asserts the claim to be against Dyett and wife and their estate, (true, there were no children then, but four born since) ; and not against the trust estate at large involving the capital. The order of the thirteenth of October 1834, is to take an account of claims against the estate of Dyett and wife only. The master's report of the 16th of Septem-

*1844.*

WARNER
*v.*
HOFFMAN.

ber 1836, goes no further than to find an account due from Dyett and wife. From that time to June 1839, the children come into being and yet are not made parties. The decree, then, could not be made to touch their interests. The trustee's acts were not their acts : *Coal Co.* v. *Dyett*, 7 Paige, 12. The children were necessary parties if it were intended to bind their estate. Then comes the decree of the eighth of April 1841, which, on its face, shows that the court had not power to decree against the capital of the estate. Under the permission there given, the present bill is filed, making the infants for the first time parties. What is the case attempted to be made by this bill ? It seeks to shift the liability established by the decree from the mother to the children. It is much stronger than the decree warrants.

Then, is their estate responsible for the debt. In order to make this out, the complainant is bound to show it beyond all question or doubt. No proof here that services were rendered for them or their estate for its preservation or in its consummation. The estate of Dyett and wife and of their children was always very distinct. The chancellor kept them distinct : 7 Paige, 13. There is no evidence that services were rendered for or on behalf of or even worked a benefit for the children's estate. It does not appear that their interest was ever involved or in danger. Nothing short of such positive evidence will answer the purpose. Master Clark's amended report shows costs and fees in the case of the coal company and of Prall, four last items one thousand one hundred and eighty dollars and ninety-one cents, for defending those suits. The future or contingent interests of the children were not involved or in danger. See the chancellor's opinion. There is only one instance of a litigation in which the complainant's services may have been important to the children, amounting to about one hundred and fifty dollars. This was the case of *Hammersley's Trustees* v. *Jacob Barker et al.* And the proofs do not show the services were essential to the protection of the infant's property. Proofs on this subject are not to be taken on a reference to a master. The complainant does not show he is entitled to any reference. The matter is put in issue by the pleadings ; and proofs should have been taken before

the examiner: *Cox* v. *Allington*, 1 Jacob's Rep. 337; 1 Hoff. Prac. 498, n.

Then, looking at the complainant as a trustee and a creditor, the bill seeks to make him a receiver. His mortgage was dated the thirteenth day of August, one thousand eight hundred and thirty-four, for one thousand two hundred and three dollars for advances to Jessy Ann beyond the rents. This mortgage is not against the infants or affecting their rights. As against the wife it is good and cannot be questioned. She had a right as a feme sole to bind her separate estate. This mortgage took preference of all subsequent claims. This was acquiesced in by the other creditors.

Next, as to admitting the complainant now to come in and participate with other creditors who proved before master Maison. See the order of reference of the twelfth of February, one thousand eight hundred and thirty-nine. He, as master, was to account for rents and profits since September, one thousand eight hundred and thirty-six. By the revised statutes the master was bound to advertise for creditors at least six weeks and the time expired on the thirteenth of · May, one thousand eight hundred and thirty-nine. At that time the complainant's claims had been passed upon by master Clark and were *sub judice*. His was a claim against Jessy Ann Dyett which he could have produced before master Maison and it would have been received; not exactly liquidated, but nearly so. By his omission, he has precluded himself, especially after a decree, without application to be let in: *Thompson* v. *Brown*, 4 J. C. R. 619. The rule is that where a creditor is let in after a decree, he is not to disturb that decree: *Grey* v. *Somerville*, 1 Russ. & M. 339; Seton on Decrees, 56, and cases cited.

If he is now entitled to participate, the decree and all that has been done under it must stand. He cannot assert a priority of his mortgage nor claim over other creditors, because this would be disturbing the decree, which has not been and cannot now be opened. He can only come in *pari pass* with respect to the future rents and profits. There ought to be no reference to ascertain whether the complainant can have a preference over other creditors; nor can he, now, be allowed to impeach the debts of such creditors. The ac-

Vol. IV.—49

counts have become stated and settled. If there are any errors therein, the complainant should have pointed them out by his bill. It is not clear to understand what is meant by a legal and equitable claim distinct from an equitable one or why the complainant's costs and fees stand on a better footing than any other debt, such as for coal or lumber provided for the estate.

But a good objection exists here in behalf of the infants against the complainant's demands, namely, the statute of limitations. It is never necessary for a guardian *ad litem* to plead or set up such a defence in an answer. Master Clark's report shows that a great part of the claim accrued prior to April, one thousand eight hundred and thirty-one. Mr. Warner was appointed a trustee on the third of November, one thousand eight hundred and thirty-one. His account was rendered to Hammersly's solicitors on the thirtieth of April, one thousand eight hundred and thirty-one. This account was assented to by the trustee and became the debt at that time. His right of action then accrued against Hammersly, who had employed him. He could have sued at law. The statute is a bar both at law and in equity. It was so before the present bill was filed. Mr. *Hoffman* also cited 10 Leigh's R. as to the necessity of making *cestuis que trust* parties.

Mr. *Benjamin W. Bonney*, for the guardian *ad litem* of the infants Dyett. This is an important suit for these infants; and involves the life or death of their estate. The complainant's present bill should have been a creditor's bill; Seton on Decrees, 52, 53. The only evidence in the cause is what is embraced by the old suits; and this evidence does not prove a claim against the infants. They were strangers to those proceedings and not affected by them. The trust deed secures them certain rights. This appears in the reported case in 7 Paige's R. The children are purchasers under the deed of trust; and do not take from father or mother. What is the issue by the pleadings in the cause? Why, whether, by force of the decree, the complainant can have satisfaction out of the capital of the estate. The decrees gave no such right. Nor is the prior bill any evidence

of facts to show such a right. It only shows Dyett and wife's estate in the premises and goes against that and nothing else. It shows he was employed by their trustees and has rendered them services. It does not appear that the children were not *in esse* at that time. The whole proceedings, then, only tend to establish the claim against Dyett and wife and her trust estate. The trustee cannot charge the trust estate for costs and counsel fees for his own services: *Moore* v. *Frowd*, 3 Mylne & Craig, 45. If this is law, it excludes all charges which accrued after he became trustee.

Mr. *Warner*, in reply. As to the scope of this bill. It is to have the benefit of a decree in a former suit. An original, not a supplemental bill. The complainant was a competitor creditor of the same estate or fund. The debt was established by the former decree; and it is based upon a claim equal in equity and right to any other debt. Other claims have obtained no preference, although the decree for them was first obtained. This was a mere casualty. There is but one trust estate in which husband, wife and children have separate interests. Separate trusts, though in but one estate and one trust qualified. The complainant is now told that he ought to have come in; but it is proved he was opposed and that the door was attempted to be shut against him. It is conceded by the opposite counsel that this complainant had a right to come in with other creditors. Those debts were of a special character, namely, for the benefit of Mrs. Dyett and on that ground were they recoverable in equity. It is denied that he had a right to come in with such other creditors. His claim is a broader one than those against Dyett and wife. It is conceded now and such is the law, that creditors may be let in at all times so long as the fund remains under the control of the court. Here the fund so remains, the property paying its rents quarterly. He is now entitled to come in and is not to be prejudiced by the decree as entered by consent nor by any thing since done under it. As to the complainant's claim, it was a legal claim, because it would bear a suit at law. He could have sued Hammersly—this is admitted. It was legal against Hammersly the trustee and equitable against Mrs. Dyett and

the income belonging to her. The necessity for the complainant to file his first bill arose from the fact that he had become trustee and could not sue himself. Then, as regards the infants and their estate. This complainant will not yield to any one in sympathies for them. Hitting the bird in the eye belongs to sportsmen. Strict proof is called for here. The court already has it in the decree, which purports to be a decree directly against the trust estate. When the bill was filed there were no children, no such *cestuis que trust*, no trust estate then, except such as Mrs. Dyett held. The fee is in trustee as a legal estate. The children's equitable estate is contingent. A debt against the estate contracted by him is binding upon the whole of what he holds. The contest has always been between Joshua Dyett's liability and the trust estate, meaning the whole estate. There is but one such estate in this case to which the decree refers, although there are different or several interests in it. The children take nothing except in the event of surviving their parents. The account originated in services to protect the whole estate as one entire estate.

*April* 9, 1845.

THE VICE–CHANCELLOR :—It is one of the objects of the bill in this cause to have a debt of five thousand two hundred and seventy-two dollars and fourteen cents (decreed to the complainant in a former suit) charged upon the capital of the trust estate; and the payment thereof enforced by writ of execution or in some other way. Leave was granted to the complainant to file a bill for this among other purposes; and this bill has accordingly been so filed. But, I think the complainant has failed in establishing it as a debt against the *corpus* of the estate belonging to the children in remainder. The burthen was upon him to show affirmatively that the debt in question was contracted for the preservation of the inheritance or for its permanent improvement; and in the absence of such proof, the court can extend it no farther than to the interest which Dyett and wife had in this trust estate and which, since the insolvency of Dyett in one thousand eight hundred and twenty-seven, has belonged exclusively to his wife, being a life interest merely in her. In the original suit it was not attempted, on the

taking of the account, to carry the liability beyond their life estate. The order of reference to master Clark directed the taking of the account between the complainants and the estate of the defendants Dyett and wife in the hands of the complainant and Mr. Hoffman as their trustees; and the master's report found, accordingly, that so much was due to the complainant from the said trust estate of Dyett and wife. Now, to carry the liability beyond their present or immediate interest in the estate, something more than has as yet appeared must be shown. In the case of the *North American Coal Co.* v. *Dyett*, 7 Paige, 9, the chancellor took care to keep the life interest of Mrs. Dyett distinct from the remainder and to charge the former with the debts contracted as on account of her separate estate. This limit must be observed in the present case.

But it is objected, in behalf of other creditors whose debts are provided for in the decree made in the suit of the *North American Coal Company*, that the complainant ought not to be let in to disturb their order of payment or to participate with them in any immediate or accruing benefit from this trust estate; and that he is now to be postponed until they are all paid. This objection, in my opinion, cannot be allowed to prevail. It would work a manifest injustice to the complainant, who, for aught that appears, is as meritorious a creditor as any of them. If he had come in before master Maison under that decree his claim must have been admitted. And it is clear, both on principle and authority, that his neglect or omission does not preclude his right to be let in now, provided the other creditors are placed in no worse condition and subjected to no more additional expense than if he had come in before the master and proved his demand: *Pratt* v. *Rathbun*, 7 Paige, 269.

The decree which I must make, will, therefore, in the first place, declare and adjudge that the complainant's debt of five thousand two hundred and seventy-two dollars and fourteen cents, in the pleadings mentioned, is not a charge upon the fee or remainder of the trust estate limited to the children of the said Joshua Dyett and Jessey Ann his wife; and that the bill as to the said children be dismissed with costs to their guardian *ad litem* to be taxed and to be paid

by the complainant.  Secondly.  That, as between the complainant and the other defendants, the complainant, as a creditor to the amount of his said debt of five thousand two hundred and seventy-two dollars and fourteen cents and interest thereon from the sixteenth day of September one thousand eight hundred and thirty-six and the costs awarded to him in and by the decree of the eighth of April one thousand eight hundred and forty-one, made in the cause of the said complainant against Joshua Dyett and Jessy Ann his wife and Murray Hoffman defendants, is entitled to stand and be let in as such creditor under the decree of the eighth of February one thousand eight hundred and forty-one in the cause of the North American Coal Company, complainants and the said Dyett and wife and others, defendants and to participate with other creditors whose debts are provided for and directed to be paid in and by the last mentioned decree out of the rents and profits of the said trust estate, in like manner as though the said complainant had gone before the master and proved his said debt or demand in that suit.  And for the purpose of enabling the said complainant to have the benefit by such decree and to be placed upon a footing of equality with the said other creditors in relation to the rents and profits or net income of the said trust estate, it is further ordered and decreed that Murray Hoffman, Esquire, the trustee of said estate, shall, before applying any more of the income towards the payment of his own debt or the debts of other creditors as directed by the said last mentioned decree, apply the net income in his hands or which may come to his hands from the said trust property towards the complainant's aforesaid debt, interest and costs, until the payment or payments to him shall be equal *pro rata* to the payments which he the said Murray Hoffman and the said other creditors or any of them may have received ; and when the said complainant shall have been made equal by *pro rata* payments upon his said debt to what the said Murray Hoffman and the other creditors have received, the said net income shall, thenceforth, be applied to the payment of all the said debts, including that of the said complainant, *pro rata*, according to their respective amounts and without any preference or priority of pay-

ment. And further, that the complainant and the adult defendants each bear their and his own costs respectively of this suit.

A rehearing was had in this case ; and the following is the further opinion and decision of the court.

THE VICE-CHANCELLOR :—The property involved in this suit is the same which was in controversy in the case of the North American Coal Company above referred to ; and I need only refer to the report of that case in 7 Paige, for the purpose of showing what are the trusts. And the only additional facts having an intermediate connection with the trusts are that Mrs. Dyett has survived her husband and that there are several children of the marriage *in esse*, who are parties to this suit and are yet minors. The interest Mr. and Mrs. Dyett had in the property under the trust deed and which devolved upon her solely, by the happening of her husband's insolvency in one thousand eight hundred and twenty-seven and by his subsequent death and the interest which her children took or became entitled to from the time of their respective births, were separate and distinct interests or estates in the property. In the parents, an equitable estate for life ; in the children, a remainder in fee. Both capable of being charged with debts, separately contracted, on the credit or for the benefit of the one or the other or for both as the case might be. And hence it was that, in the case of the North American Coal Company, it was held that debts contracted on account of or for the benefit of Mrs. Dyett's equitable interest in the property, as a trust estate, were chargeable upon and were to be paid out of the rents and profits belonging to her and not out of the capital or fee belonging to the children. The complainant contends, however, that his is a debt of a higher character—that it originated in professional services rendered by him for the preservation of the inheritance, as well as for the protection of Mr. and Mrs. Dyett's interests as *cestuis que trust*—and, consequently, that he is entitled to a decree that shall reach the inheritance or fee of the property and subject it to a sale for his benefit—such is one

1844.

WARNER
*v.*
HOFFMAN.

*July* 24,
1845.

*July* 6,
1846.

object of his bill in this cause. The answers deny his right to such a decree ; and so far, as facts are alleged, as entitling him to it, they are put in issue. And, yet, no witness has been examined on that branch of the case. He relies altogether upon the proceedings, orders and decrees in two former suits in this court for the evidence to sustain his claim to such relief ; and insists that it appears to be a matter already adjudicated in his favor. He is met, however, with the objection that the proceedings and decrees in those suits can have no effect upon the rights of the infants who were not parties to them ; and I do not see how any thing that has heretofore been said or done, even though it should seem to have a direct bearing upon their rights of property, can be allowed to affect them. They have had no opportunity, until they were brought before the court in the present suit, to be heard or to have their rights properly attended to ; and they now deny that the indebtedness was contracted for their benefit or for the preservation of their estate. The burthen of proof is thrown on the complainant. He is bound to show the debt was contracted. It is matter of evidence ; and the proceedings in other suits, though of record, are not that sort of evidence which the court is bound to require in a case of such vital importance to the interests of these infant children. But, taking the pleadings, proofs, master's reports and decrees in the former suits as we find them and admitting them as evidence (for they have been read and referred to as such in this cause) and what facts do they establish as being necessary to the complainant's case against these infants ? I do not understand them as proving that he was employed for the protection of the infants' estate in the property and that the services he rendered were on their account as beneficiaries under the trust or as owners of the fee. Wherever the words *trust estate* or *trust property* or words of like general import are used in the various proceedings alluded to, they must be regarded as used solely with reference to the trust as it existed in favor of Dyett and wife and to the interest or estate which they had in the property, because there was no other or greater interest in the property than such as they were entitled to necessarily or properly in-

volved in the litigation then going on. There were no parties to the suits as defendants other than Dyett and wife and their trustees. And the chancellor, necessarily, said in the case of the North American Coal Company that, if there were any creditors whose debts were chargeable upon the trust property generally, capital as well as income, they should make their claim by a distinct bill and to such a bill the children of Mrs. Dyett should be made parties. Hence, in their absence and upon a bill not filed for that purpose, the question of so extended a liability could not properly arise or be considered, much less be adjudicated. That it was not considered or passed upon in the suit in this court of the present complainant against Dyett and wife and Mr. Hoffman, as trustee, instituted for the purpose of taking an account of the complainant's demands and of having the amount due to him ascertained and determined, is manifest from the final decree made in that cause on the eighth day of April one thousand eight hundred and forty-one; for it is there, expressly, provided, among other things, that the complainant should be at liberty to file a bill as he might be advised for the purpose of making his debt (ascertained to be five thousand two hundred and seventy-two dollars and fourteen cents) and his costs of suit a charge upon the capital of the trust estate and to have payment and satisfaction out of the same by writ of execution or otherwise. Thus showing that his debt had not, yet, become a charge and was not to be so made by that decree. Pursuant to the leave thus granted, the present bill has been filed, but the complainant has entirely failed, in my judgment, to support, by proper and sufficient evidence, this particular object of his bill. It is made a point, on this rehearing, that if the complainant has placed undue reliance on the proceedings in the former causes, as *prima facie* evidence to make out his case, he ought now to be permitted to correct the mistake and to be allowed still to take proofs. I know not how this can be done without departing from all rule in the practice and proceedings of this court. There is nothing shown to warrant me in adopting the suggestion within any of the principles on which the court acts in allowing causes to stand over, (as

VOL. IV.—50

1844.

WARNER
*v.*
HOFFMAN.

in *Cox* v. *Allingham*, Jacob's Rep. 337,) to enable a party to supply some unforeseen and unexpected defect in his testimony or to produce some newly discovered evidence.

Again, it is asked that the court institute an inquiry before a master, as to the character of the complainant's services and how far they contributed to preserve and benefit the inheritance, so that a portion, at least, of the debt may be charged thereon. But, the answer to this is, that the complainant has not shown, by any legal or competent evidence, that any part of his debt accrued for such service; and without some proof to that effect, in the first instance, there is no foundation on which to institute an inquiry with a view to an apportionment between the life interest of the mother and the fee of the children.

Upon the whole, it appears to me that I can make no decree more favorable to the complainant than the decree which I directed at the conclusion of my opinion of the ninth of April one thousand eight hundred and forty-five.

Let that decree be drawn up and entered.