VANDERHEYDEN and wife, *appellants,* *vs.* MALLORY and HUNTER, *respondents.*

The separate estate of a married woman is not liable at common law for her debts contracted before marriage; and the only ground on which it can be reached in equity, is that of appointment, i. e. some act of hers *after marriage* indicating an intention to charge the property.

The bankruptcy of the husband, although it extinguishes the debt as to him, and suspends the legal remedy as to her during the coverture, does not afford any ground for proceeding in equity to charge her separate estate.

Vanderheyden *v.* Mallory.

The creditor in such a case may prove his debt and share in the distribution of the bankrupt's estate.

A *feme sole*, having contracted a debt, and owning some shares of bank stock, married. After marriage, the stock, with the consent of the husband, was transferred to a third person for the purpose of having it transferred back to her for her sole and separate use, which was accordingly done. She also held other shares of bank stock which had been transferred to her separate use by the executor of her father's estate. The creditor sued the husband and wife at law, and being met by a plea of the husband's bankruptcy, discontinued. He then filed a bill in equity for the purpose of reaching the bank stock. No fraud in the transfer to the wife's separate use being alleged, nor any act of the wife after marriage indicating an intention to charge this fund; *held*, that the bill could not be sustained.

It seems, that when a debt is contracted by a woman during coverture, either for herself or as surety for her husband, this will be *prima facie* evidence of an appointment or appropriation of her separate estate to the payment of the debt.

But this doctrine has no application where the debt was contracted by the woman before marriage. The act of marriage does not raise an appointment; nor does a promise by her and her husband to pay the debt out of some other fund not conveyed to her separate use, e. g. a legacy or distributive share in her former husband's estate, enable the creditor to reach her separate estate.

The law casts upon the husband a temporary liability for the debts of the wife contracted before marriage. This liability ceases with the *coverture*, unless judgment has been recovered against both. If the wife survive the husband and judgment have not been recovered, her sole liability revives. *Per* JEWETT, C. J.

The bankruptcy of the husband extinguishes the liability as to him; but it revives against the wife if she survive her husband. *Per* JEWETT, C. J.

APPEAL from chancery. Joel Mallory and John Hunter filed their bill in the court of chancery against Levinus Vanderheyden and Lenchy his wife, stating the case in substance as follows: Between the 30th day of April, 1835, and the 6th day of December, 1837, the said Lenchy being during that period the widow of John J. Bradt and a *feme sole*, became indebted to the complainants in the sum of $2022,96, for goods sold and moneys advanced at different times. The bill averred that the complainants credited her in this sum upon the knowledge that she was entitled to a large amount of property from the estate of her late husband. The complainants were indebted to the estate of Bradt in a large sum, and while their account was accruing against Lenchy she agreed with them that she would make an arrangement with the executor of

Bradt to have such account applied against their indebtedness to that estate.

On the 6th of December, 1837, the said Lenchy and Levinus intermarried, and between that time and February, 1843, they frequently promised that the account against Lenchy should be arranged in the manner above stated, and in the expectation that this would be done the complainants neglected to enforce the demand: but about the time last stated they refused to make such arrangement or any other for the payment of the debt. The complainants therefore, in May, 1843, instituted a suit in the supreme court against Vanderheyden and wife upon such account, to which they pleaded in bar that on the 17th day of April, 1843, the said Vanderheyden was discharged as a bankrupt from all his debts under the act of congress passed August 19, 1841. This plea was true in fact, and the complainants, being advised that it was an effectual bar, discontinued the suit.

The bill further stated that during the time the complainants' account was accruing against Lenchy, she was worth a large amount of property bequeathed to her by her late husband, a large part of which was unpaid to her and yet remained in the hands of the executor, but a portion of which had then been received by her and invested in bank stocks; that before any part of the complainants' demand accrued against her, she was the owner of thirty-five shares of bank stock, (the value of which was $2100,) which stood in her own name; that she continued to be the owner of those shares while such demand was accruing, and was still the owner thereof in her own right; that after her marriage with Vanderheyden, she, with the advice and consent of her husband, transferred said thirty-five shares to a third person, for the purpose of having the same transferred back to her for her sole and separate use, which was immediately done, so that at the filing of the bill *she held those shares in her own name and to her sole and separate use:* also that at the filing of the bill she was the owner in her own right of nineteen other shares of bank stock, received by her out of the estate of her father, and which the executor of that estate

had transferred *to her sole and separate use :* also that she was possessed in her own name and right of a large amount of other property.

The prayer of the bill was that Lenchy Vanderheyden might be decreed to pay the complainants' demand, and to apply for that purpose her separate property before mentioned, or so much thereof as should be necessary, and for general relief. The defendants demurred to the bill, as well generally for want of equity, as for reasons more specially assigned. Their demurrer was overruled by the vice chancellor of the third circuit, to whom the case was referred for hearing, and his decision was affirmed by the chancellor on appeal. The defendants appealed to this court.

*N. Hill, Jr.* for appellants. I. The debt in question was not contracted under circumstances giving the respondents' a right to proceed against the separate property of Mrs. Vanderheyden, nor has any thing been done by her since which gives such right. It was contracted by Mrs. Vanderheyden as a *feme sole,* and the bill does not pretend that the bank stock in question was even an inducement to the credit given her. On the contrary, it alleges that the complainants relied upon means which they *expected she would derive* from the estate of her former husband, and not upon the bank stock, which she *then owned.* The subsequent acts of Mrs. Vanderheyden show no intention to charge the bank stock with the complainant's debt, but only the property held by Bigelow, as executor of her former husband. The only ground upon which the separate estate of a *feme covert* can be reached in equity is that of appointment ; i. e. some act on her part *clearly evincing an intention to charge the property proceeded against.* And as to the bank stock in question, such an intention, so far from being shown, is disproved by all the circumstances. (2 *Story's Eq.* § 1399 ; 2 *Rop. Husb. and Wife,* 241 *to* 244.)

But the doctrine of *appointment* has no application to this case. That relates exclusively to acts done by married women *as such ;* and there is no pretence that Mrs. Vanderheyden,

since she married her present husband, has done any act which can be construed into an appointment, either express or implied. (2 *Story's Eq.* §§ 1398, 1399, 1400.) No case holds that the mere act of marriage raises an appointment by implication ; and therefore the most the complainants can claim is, that their demand is a *general debt* of the wife, contracted on her *general personal responsibility*. And the authorities agree that, for such a debt, her separate property cannot be reached in equity, any more than at law. (2 *Story's Eq.* § 1398; 2 *Rop. Husb. and Wife,* 241 *to* 244.) The chancellor does not put his decision upon the doctrine of appointment, but upon an assumed equity, arising out of the husband's discharge in bankruptcy ; and he admits that no precedent can be found for the decision except *Biscoe* v. *Kennedy,* (1 *Brown's Ch. Cas.* 18, *note.*) We contend that he erred, for the following reasons: 1. The husband's discharge in bankruptcy creates no such equity as against the wife. Though the remedy by action is barred, the creditor can prove his debt, under the commission, and thus reach the property of the husband not only, but all the property of the wife not settled to her separate use. (*Bankrupt Act,* 1841, § 3; 4 *Paige,* 73, 4.) 2. The same species of equity exists, therefore, upon principles of natural justice, where the remedy by action proves inadequate, by reason of the husband's pecuniary inability : and yet no one pretends that this furnishes ground for charging the wife's separate estate. 3. The decision subjects the separate property of the wife for her *general debts,* contracted upon *her general personal responsibility,* which is contrary to law. (2 *Story's Eq.* § 1398; 2 *Rop. Husb. and Wife,* 241 *to* 244.) The case of *Biscoe* v. *Kennedy,* relied on by the chancellor, ought not to govern the present question. It is not found in any regular series of reports, but only in a note furnished the reporter by counsel. It has never been acted upon, or even referred to since, by any judge or writer, till the decision of this case. · (*Ram on Leg. Judg.* 49, 50.) Brown's Reports are at best but poor authority. (*Greenl. Overr. Cas.* 57 ; *Ram on Leg. Judg.* 101.) The particular reasons for the decision are not stated, and cannot be ascertained. (*Id*

Vanderheyden *v.* Mallory.

21.) The controlling reason may have been that the husband was regarded as civilly dead after outlawry, and the wife thus restored to her capacity as a *feme sole.* (2 *Kent's Com.* 158 ; 2 *Wm. Bl. Rep.* 1081, 2.) Or the reason may have been that the settlement on the wife was fraudulent as to creditors, and so the property was the husband's ; that being the only ground taken by the counsel who argued the cause. The absence of all reliable authority in favor of the principle assumed by the chancellor, tends strongly to prove that no such principle exists. (*Ram on Leg. Judg.* 156, 7.)

II. The discharge in bankruptcy of Mr. Vanderheyden operated as an extinguishment of the debt against his wife, at least during coverture. The debt was proveable under the bankrupt act, and therefore is extinguished, at least during coverture. (*Bank. act,* §§ 4, 5 ; 12 *Verm. Rep.* 510, 511 ; 13 *Pick.* 64, 67.) The very fact that the bankrupt act operated to discharge the husband is conclusive to show that the complainants' claim is a *debt*, within the meaning of the act. If so, it is extinguished. The discharge operates upon the debt in the same manner as a *release of the husband by the creditor,* and of course extinguishes it. Moreover, it has been expressly decided that the wife's debts *dum sola,* are absolutely extinguished by the husband's discharge as a bankrupt or insolvent. (2 *Nev. & Mann* 255 ; 10 *Mod. Rep.* 243 ; 1 *P. Wms.* 249 ; *Gilb. Eq.* 318 ; *Reeve's Dom. Rel.* 71 ; 2 *Kent's Com.* 146.) The reasoning on which these cases are based applies to the remedy in equity as well as at law. And the bankrupt act declares, moreover, that the certificate shall be a full and complete discharge of *all debts,* in all courts, &c. and may be pleaded as a full and complete bar to *all suits* brought in any court. (*Bank. act,* § 5.)

III. The bill is not framed to reach the bank stock on the ground that there was fraud in transferring it to the wife's sep arate use. On the contrary, it treats the bank stock as her *separate property,* and seeks to reach it *as such,* thus conceding the validity of the transfer.

IV. There is no equity in this case. The bill shows that independent of the bank stock, the husband acquired a *large*

*amount* of property from his wife. The complainants might have reached this by due diligence, but chose to wait until the husband's other creditors had exhausted it, and now claim to seize the small remnant in question. The wife has been obliged to submit to the *disadvantages* arising from bankruptcy, and is therefore entitled to share in its *advantages*.

V. But the bill shows that the complainants have not exhausted their remedy against the husband's estate. Equity requires that they should prove their debt under the commission, and only resort to the wife's separate property for the balance.

*D. Buel, Jr.* for the respondents. I. The doctrine established in the courts of equity in the earlier as well as in the more recent cases is, that a married woman, as to her separate property, is to be deemed a feme sole, and therefore that her engagements, although they would not bind her person, should bind her separate property. Among the numerous early cases are the following: *Peacock* v. *Monk,* (2 *Ves. sen.* 190 ;) *Hulme* v. *Tenant,* (1 *Brown's Ch. C.* 16,) *and the cases cited in Mr. Eden's note ; Lillia* v. *Airey,* (1 *Ves.* 277 ;) *Balpin* v. *Clarke,* (17 *id.* 277.) The most recent cases in England accord with the early cases, and establish the position, that if a *feme covert* having separate property obtains credit, her separate property shall be subject to the debt without any special appointment or charge, written or verbal. (*Murrey* v. *Burlee,* 4 *Simons' Ch. Rep.* 82, *S. C.* 6 *Eng. Ch. R.* 43 ; *Same case on appeal to Ld. Ch. Brougham,* 3 *Mylne & Keen,* 209, *and* 9 *English Ch. R.* 1 ; *Owen* v. *Dickinson,* 1 *Craig & Philip,* 48.) The American cases, and especially those decided in the court of chancery of this state, and the late court of errors, go the full length of the earlier and more recent English cases. (*N. A. Coal Co.* v. *Dyott,* 7 *Paige,* 9, *S. C. on appeal,* 20 *Wend.* 570 ; *Gardner* v. *Gardner,* 7 *Paige,* 112, *S. C. on appeal,* 22 *Wend.* 526 ; *Jacques* v. *The Methodist Episcopal Church,* 17 *John.* 548, *per Spencer, C. J. and Platt, J.*)

II. The facts stated in the bill and admitted by the demurrer present at least as strong a case for the exercise of the power of the court over the separate property of Mrs. Vanderheyden, as would have been presented if the debt had been contracted subsequently to her marriage to Vanderheyden, for, 1. The debt was contracted on the credit of her being the owner of property derived from her former husband, and from her father, which she has continued to own, and still enjoys. 2. The stocks sought to be subjected to the complainants' debt were transferred to her sole and separate use on the advice of her husband, and shortly before his bankruptcy, and were thus kept from passing into the hands of the assignee in bankruptcy; and 3. Vanderheyden, by his discharge in bankruptcy, is forever exonerated from personal liability for the debt, and no suit at law can be brought against his wife during her husband's life. (*Miles* v. *Williams*, 1 *P. Wms.* 258.)

The consequence of denying the prayer of the bill would be to enable Vanderheyden to make use of his bankrupt discharge, not only to rid himself of his own debts and free himself from suits for his wife's debts, but by a new species of subrogation to take the place of her creditors in respect to her separate property, and instead of having it applied to pay debts which were contracted on the credit of it, quietly enjoy it himself. It is not strange the chancellor felt so strongly the injustice of allowing the defendants to put the complainants at defiance, in respect to the wife's separate property, as to induce him to declare that if a precedent for granting the relief asked for was wanting, he should deem it his duty to make one. But the chancellor did not find it necessary in this case to change the law or make a precedent. A case was decided by Sir Thomas Clarke, master of the rolls in 1762, which is analogous and fully sustains the grounds on which the bill was filed. (*Briscoe* v *Kennedy*, 1 *Brown's Ch. C.* 18, *reported by Mr. Eden in note to Hulme* v. *Tenant.*) The only difference between that case and ours is, that in *Briscoe* v. *Kennedy* a suit at law was instituted against husband and wife, and the husband (who

was out of the realm,) prosecuted to outlawry before the court sustained the bill. But outlawry in *civil cases* is a mere process. It is not civil death, nor equivalent to a divorce. (*Bac. Abr. Outlawry, D.* 2.) In our case, the defendants in the suit at law, pleaded the bankrupt discharge. In both the remedy at law was resorted to and exhausted before filing the bill. The authority of *Briscoe* v. *Kennedy*, therefore, furnishes a precedent in point.

III. But it is objected that the effect of the bankrupt discharge of Vanderheyden was not only to exonerate him from the claim, but that it cancelled the debt against the wife and her property, and destroyed all remedies in equity as well as at law for the debt. This proposition, which the appellants' counsel endeavored to sustain by a remark of Ch. J. Parker, in *Miles* v. *Williams*, (1 *P. Wms.* 258,) we deny. The point was not involved in that case. And so the chief justice virtually admits. He says: " It will be a discharge to her, at least a temporary one, viz: during the husband's life. *But though it be not necessary to give any opinion upon that, yet I think* it will amount to a perfect release, and the wife will be discharged forever." The opinion respecting the effect of the certificate being an absolute discharge of the wife from the debt, is clearly and avowedly an *obiter dictum*, and no decision sanctioning it as law in any case where the question directly arose, can, we think, be produced. It would destroy the symmetry of the law respecting the relation of husband and wife. If the wife dies before judgment is obtained against the husband, he is not liable; but if she survives him, she is liable. Why should a discharge of the husband in bankruptcy have a greater effect in releasing the wife's debts, contracted *dum sola*, than his death? (*Clancy on the rights of married women*, 13 *to* 16; *Reeve's Dom. Rel.* 68, 69; 2 *Kent's Com.* 143, 144, 4*th ed.*; *Woodman* v. *Chapman*, 1 *Camb. R.* 189, *and notes; Heard* v. *Stamford*, 3 *P. Wms.* 409) There is nothing in the bankrupt law of 1841 that gives to the discharge of the husband the effect contended for by the appellant. The 4th section pro-

Vanderheyden *v.* Mallory.

vides, that every bankrupt complying with the provisions of the act "shall be entitled to a full discharge from all his debts.' As the wife's debts did not become his debts by the marriage, why should a discharge from his debts release the debts against her? The common law doctrine, that if one of two or more joint debtors is released, the release operates to discharge the others, cannot apply; for the husband is in no sense a joint debtor with the wife, as to her debts contracted *dum sola,* before judgment obtained against them.

IV. If it is objected that the stocks are not held by a trustee, but invested in Mrs. Vanderheyden's own name, we answer, that the husband will be deemed her trustee; and it was therefore necessary to make him a party to this bill. (2 *Kent's Com. 4th ed.* 162, *and note (b,) in which the authorities are collected; also* 2 *Story's Eq.* 3d ed. §. 1380, *and note* 3.)

V. As to the objection that the complainants should have resorted to the assets of Vanderheyden, in the hands of the assignee in bankruptcy; we answer, 1. That it will be time enough to meet that question when it shall be set up in the defendants' answer and proved that any assets were transferred. 2. Vanderheyden was a voluntary applicant and must have been insolvent, and the court on a demurrer to the bill will not presume that the debt may have been satisfied out of property in the assignee's hands. 3. As this debt was not the debt of Vanderheyden, (as before shown,) it is questionable whether the complainants would have a right to claim distribution of any assets which Vanderheyden may have possessed. They cannot be considered as creditors of Vanderheyden. He was never their debtor. It seems clear, therefore, that they could not come in for distribution if there were any effects to distribute. (*Bankrupt act,* §5.) But if there were assets of Vanderheyden in the hands of the assignee, and if such assets could legally be applied towards this demand, it would be more equitable to leave them for *his* creditors, and require the complainants to seek satisfaction for their demand out of property on the faith of which the credit was obtained.

JEWETT, Ch. J.   By the common law a married woman is
disabled from disposing of either real or personal estate during
the marriage, with the exception of the former by fine, and, by
our law, by any legal conveyance executed under a due exam-
ination ; and of the latter with the privity and concurrence of
her husband.   That being the legal rule, a married woman
cannot, at law, bind herself personally by any contract in re
gard to her separate property.   In conformity with this princi-
ple courts of equity hold that her *general* personal engage-
ments will not affect her separate property.   And to this extent
courts of law and equity act in concert.   But as a conse-
quence of the principle established that a married woman
may take and ·enjoy property to her separate use, courts
of equity enable her to deal with it as a feme sole.   The
right of disposition or appointment is an incident belonging
to such interest and power.   She may sell, pledge, or incumber
her separate estate when she shows an *intention* so to dispose
of it, in the same manner as if she were a feme sole, unless spe-
cially restrained by the instrument under which she acquires
it ; and every security thereon executed by her is to be deemed
an appointment *pro tanto* of the separate estate.   (*Hulme* v.
*Tenant*, 1 *Brown's Ch.* 16 ; *Fetteplace* v. *Gorges*, 1 *Ves. jr.*
46 ; 2 *Story's Eq. Jur.* §§ 1392, 1399 ; *Jaques* v. *The Meth-
odist Epis. Church*, 17 *John. R.* 549 ; *Gardner* v. *Gardner*,
22 *Wend. R.* 526.)

The great difficulty is, to ascertain what circumstances,
in the absence of any positive expression of· an *intention* to
charge her separate estate, shall be deemed sufficient to
create such a charge, and what sufficient to create only a
general·debt.   But it is agreed, that there must be an in-
tention to do so, otherwise the debt will not affect her sepa-
rate estate.

The fact that the debt has been contracted by a woman du-
ring her coverture, either as a principal or as a surety, for her-
self, or for her husband, or jointly with him, seems ordinarily
o be held *prima facie* evidence to charge her separate estate

without any proof of a positive agreement or intention so to do. (2 *Story's Eq. Jur.* § 1400.)

The doctrine of appointment or appropriation in equity, however, relates wholly to engagements made or debts contracted by a married woman, *as such,* having a separate estate, and in reference to it. It has no application to debts contracted or engagements entered into by a feme sole.

The bill contains no allegation that Mrs. Vanderheyden, after her marriage with her present husband, did any act or made any engagement with or promise to the complainants in reference to their debt against her or in reference to her separate estate, other than, it is alleged, that soon after the intermarriage of the defendants and at several different periods subsequently, one of the complainants made application to them, urging them to make some arrangement by which the application of the debt due to the complainants from said Lenchy would be made on the debt which they owed the estate of Bradt in the hands of his executor, and that they, until about the month of February, 1843, constantly upon every request so made, evinced a desire to have an arrangement made with the executor of Bradt by which such application would be made, and that they agreed that such an arrangement should be made. This is all that the bill contains of acts charged upon Mrs. Vanderheyden since she has been a married woman, to sustain a claim of an appointment in equity by her for the payment of the complainants' debt out of her separate estate ; and this, it seems to me, falls far short of bringing the claim within any principle heretofore established in equity. Even if Mrs. Vanderheyden had contracted the debt subsequently to her marriage with Vanderheyden, the facts charged expressly negative the idea that she. *intended* to pay, or that the complainants expected to be paid, their debt, out of what is now denominated her separate estate. The allegation in that respect is, that there was a large amount due to her from, and that she had a claim upon, the estate of her late husband, Bradt, out of *which* she agreed to make an arrangement with his executor to enable the complainants to have applied upon

the debt which they owed Bradt in the hands of his executor, the amount of the debt which she had contracted and should contract with the complainants, and that the complainants knowing that she was thus entitled and would have abundant means therefrom to pay any debt she might contract with them, credited her. It is nowhere alleged that any part of the amount to which Mrs. Vanderheyden was entitled from the estate of her former husband, out of which she promised to pay, and out of which the complainants expected to be paid in the manner stated, has ever come to her hands. For any thing appearing in the bill, the same remains in the hands of Bradt's executor, or has been collected and received by Vanderheyden, or if not, has passed to the assignee in his proceedings in bank ruptcy. The thirty-five shares of bank stock was owned and held by her from 1833 to July, 1842, when it was formally transferred to her for her separate use. The residue of the stock which is now held by her in that character did not come from the estate of her former husband. It is a part of her share bequeathed to her by her father. And although it is alleged that Mrs. Vanderheyden now holds in her own right and name a large amount of other property, it is not averred that it was all or any portion of her share in, or claim upon, her former husband's estate, in the hands of his executor, at the time of the accruing of her indebtedness to the complainants, in refer ence to which exclusively, she when sole, and she and her present husband since their intermarriage, it is alleged, so agreed to make an arrangement respecting the payment of the complainants' debt. Therefore I see no ground stated in the bill, which would authorize a court of equity to subject the separate property of Mrs. Vanderheyden to the payment of the complainants' debt against her. There is nothing which gives countenance to the idea, that she ever, either before or since her marriage, made any contract with the complainants indicating any *intention* to affect by it the property which she now holds to her separate use ; but on the contrary, the bill expressly neg- atives such intention. The whole dealing and contract, as well prior as subsequent to her marriage, referred to other and dif-

Vanderheyden v. Mallory.

ferent property as the means of paying the debt contracted by her. It is true, that prior to her marriage all of her property was liable for the payment of this debt upon a judgment and execution against her; and even after her marriage her separate property might have been subjected to it upon a judgment and execution against her and her husband, if the transfer of it or any part of it to her separate use was fraudulent as against her creditors; but that is not alleged, and of course no decree at any time, either before or since the discharge of the husband, could be made subjecting such separate property to the payment of the debt upon that ground.

It is further insisted by the defendants that the discharge in bankruptcy of the husband operated as an extinguishment of the debt against the wife, at least during coverture. It is argued that it extinguished the husband's liability for the debt. It could not operate to extinguish the debt as against the wife, unless it was the husband's debt absolutely and exclusively. The effect of the discharge is to extinguish his, not her debts. By the marriage, the law cast upon the husband a contingent and temporary liability for all the debts and demands against the wife contracted by her before coverture, if sued and judgment recovered against both, before her death, but not after. If the wife survive her husband, her sole liability revives. She may then be sued upon all her contracts made before marriage, which remain unsatisfied. The husband's liability is gone by his death, and no liability is left upon his representatives. (1 *Chit. Pl.* 44.)

The case of *Miles* v. *Williams*, (1 *P. Wms.* 249,) was referred to as an authority to show that the debt is extinguished by the discharge, as well against the wife as the husband. That was an action of debt against husband and wife, upon a bond made by the wife *dum sola.* The defendants jointly pleaded in bar the discharge of the husband in bankruptcy after the intermarriage, to which the plaintiff demurred. One question was whether, it being debt on a bond given by the wife *dum sola*, it was such a debt as should be discharged by the bankruptcy of the husband by virtue of the statute 4th Ann, ch. 17,

mentioned in the plea.    The words of the clause upon which
it depended are, "that the bankrupt shall be discharged from
all debts by him due and owing at the time he became bank-
rupt;" and then, in case he be sued for any such debt, the act
directs " that he shall and may plead in general that the cause
of action did accrue before he became bankrupt." It was held
that it was the husband's debt within the meaning of the stat-
ute, and that the discharge was therefore a bar to the action.
And as to the wife, it was said that it was a discharge as to
her, at least a temporary one, to wit, during the husband's life ;
and the chief justice added, that he thought it would amount
to a perfect release, and the wife would be discharged forever.
But it was admitted that the decision of that case did not call
for any opinion as to the effect of the discharge upon the debt in
regard to the wife.

The 4th section of the United States bankrupt act of August,
1841, provides that every bankrupt who shall *bona fide* surren-
der all his property," &c. shall unless, &c. "be entitled to a full
discharge from all his debts, to be decreed and allowed by the
court which has declared him a bankrupt, and a certificate
thereof granted to him by such court accordingly upon his peti-
tion filed for such purpose." " Provided, that no discharge of
any bankrupt under this act shall release or discharge any per-
son who may be liable for the same debt as a partner, joint
contractor, endorser, surety or *otherwise*, for or with the bank-
rupt." And again ; " And such discharge and certificate, when
duly granted, shall in all courts of justice be deemed a full and
complete discharge of all debts, contracts and other engage-
ments of such bankrupt, which are proveable under this act, and
may be pleaded," &c.

That this debt, as against the husband in his proceedings in
bankruptcy, was proveable, admits of no doubt; but that does not
necessarily affect the question whether the discharge operated
to extinguish the debt as against the wife.    Unless it was a
debt proveable under the act, the husband would not be dis-
charged from it, for the discharge as to him only operates upon
debts of that character.

Vanderheyden *v.* Mallory.

The difficulty in holding the husband's discharge to be an ex·
tinguishment of the *debt* absolutely, is raised by the principle that
the debt existing against the wife before coverture is not trans
ferred from her to the husband by the marriage. The legal effect
of that is to suspend the individual liability of the wife, and to
create and cast upon the husband and wife a joint liability for the
payment of the debt, to continue during the coverture and no
longer, unless in the mean time judgment shall be recovered
against them. And when that terminates by the death of either,
the liability thus created ceases; and if the wife survive her
husband, her individual liability for the debt revives, unless in-
deed the debt is paid, released, or judgment is recovered during
the coverture. The *nature* of the debt is not changed by mar-
riage; that is only done by the recovery of a judgment against
the husband and wife. It then becomes the debt of the hus-
band, and may be enforced against him and his property after
the death of the wife. And in case of the death of the wife
leaving her husband surviving, he is no longer liable for the
debts of the wife contracted by her before marriage, where a
judgment has not been recovered: but he as her administrator
would be liable for such debts to the extent of the assets which
he should receive, if he took administration on her estate to
which he would be entitled; and if he should not take admin-
istration on her estate, he would be presumed to have assets in
his hands sufficient to satisfy her debts, and would be liable
therefor. (1 *R. S.* 75, § 29; 2 *Kent's Com. 5th ed.* 116, 411.)
My conclusion is that the husband's discharge operated to ex-
tinguish his liability for the debt of the wife, and would be a
bar, if pleaded, to any action brought against him and his wife
for the recovery of any debt contracted by her before their mar-
riage, and to suspend the remedy for the recovery of such debt
as against the wife during coverture.

The chancellor did not (as the vice chancellor seems to have
done) place his decision upon the doctrine of appointment in equi
ty by the wife for the payment of the debt, but upon a supposed
equity resulting from the fact that the husband's liability for the
debt had been extinguished by his discharge under the bank

Vanderheyden *v.* Mallory.

rupt act, and the complainants' remedy at law against the wife and her estate suspended during coverture. And upon this ground the chancellor held that they could come into a court of equity to subject her separate property to the payment of their debt, although the husband is still living, and although the wife's separate estate, during the life of her husband, is not liable, generally, for debts contracted by her before the marriage. The only case relied on by the chancellor as an authority for his decision is the case of *Biscoe* v. *Kennedy*, (1 *Brown's R.* 18, *n.*) decided at the rolls in 1762, which was this: The defendant, Jane Kennedy, when a *feme sole*, was indebted to the plaintiff, Biscoe, in £114, by bond, 22d April, 1755, and was possessed of several leasehold houses and £1000 East India stock. By settlement, on her marriage with the defendant James Kennedy, all her personal estate (excepting £500 East India stock which the husband was to have) was conveyed to the defendant MacCollock, in trust for the separate use of the defendant Jane. The marriage having taken effect, the plaintiff filed his bill (without having sued the husband) to have the separate estate of the wife applied to the payment of the debt; which was dismissed. The plaintiff then sued out writs against the husband and wife; but the husband absconding, could not be served, and the plaintiff proceeded to outlawry, and then filed the bill to be paid out of the separate estate of the wife. The defendant insisted that during her husband's life her separate estate was not liable to this debt, contracted by her while sole. The plaintiff contended that the settlement was, as to him, fraudulent. The master of the rolls, upon the hearing, declared that upon the circumstances of the case the effects of the defendant vested in her trustee were to be considered as the property of a *feme sole*, and ordered the plaintiff's debt and costs to be paid out of the £500 East India stock in the hands of her trustee.

The declaration that the property vested in the trustee for the use of the wife should be considered as the property of a *feme sole*, was in accordance with well settled principles, and in regard to which it is well settled that she is to be treated as a *feme sole*, having the general power of disposing of it, but

without capacity to charge herself personally.    But upon what principle the decree followed that the debt should be paid out of her separate property, during the lifetime of her husband, is not clearly stated, and cannot with any certainty be ascertained from the statement of the case or the decision of the court. The ground may have been that the wife was deemed to be restored to her capacity as a *feme sole,* capable of suing and being sued without her husband, regarding him as *civilly dead* after the outlawry,    (2 *Kent's Com.* 154, 5th ed.; 2 *Bac. Abr. tit. Baron and Feme, M.* 64; *Hyde* v. *Price,* 3 *Ves. jun.* 444.)

If by the discharge of the husband in bankruptcy, an equity is created against the wife, to subject her separate property to the payment of the debt during the life of her husband, it would be difficult to give a good reason why such equity would not arise in every case where such creditor had exhausted his remedy against the husband and wife at law and in equity without satisfying his debt by reason of the pecuniary inability of the husband, and yet it has not as yet been suggested that such equity would arise in that case.    The right of the creditor to be paid his debt, would be no stronger in the one case than in the other, and the remedy would be no more inadequate to meet the justice and equity of the case in the one than in the other.    By the decree declaring the husband a bankrupt, all the property and rights of property of the wife to which the husband became entitled, either absolutely or qualifiedly, by the marriage, undisposed of previously, in addition to his other property, by operation of law became vested in the assignee in bankruptcy, subject to the wife's right by survivorship; ( *Van Epps* v. *Vandeusen,* 4 *Paige,* 73 ; § 3 *of the U. S. Bankrupt act of August,* 1841; *Mitford* v. *Mitford,* 9 *Ves. Jr.* 87;) in which the complainants were entitled to share on proving their debt *pro rata,* with all the other creditors of the husband, with certain exceptions specified in the bankrupt act. (*See* § 5.) And this is the remedy given by law to the creditors of a bankrupt to meet the equity and justice of their case; and for any thing alleged in the bill, the complainants might have realized their entire debt if they had pursued this remedy.    At all events, if

they refuse or neglect this remedy, they do not present any very high claim upon a court of equity, to alter the law to enable them to have applied the separate property of the wife, to the payment of their debt, in advance of the legal period, when it might be so subjected, namely, when the marriage shall be dissolved by the death of either husband or wife. There is no remedy for the wife to have applied any portion of the property which passed to the assignee in bankruptcy, to satisfy the complainants' debt. But *they* have such remedy, and although they have a remedy upon the separate property of the wife on the termination of the marriage by the death of either husband or wife, I think the wife has a strong equity against the complainants, requiring them to assert their right under the proceedings in bankruptcy.

The equity which the chancellor assumed, as arising out of the husband's discharge in bankruptcy, in this case, is very nearly akin to the equity which prevailed in the case of *Freeman* v. *Goodham*, (1 *Cas. in Chan.* 295,) where a *feme sole* bought goods, but did not pay for them, and afterwards married and died, having brought a good portion, which came to the hands of her husband, who, on the creditor's filing a bill against him to be paid for the goods, demurred; and when Lord Chancellor Nottingham overruled the demurrer, saying with some earnestness, *that he would change the common law in that point.* And in the case of *Powell* v. *Bell*, (*Abr. of Cases in Eq.* 16; *Pre. in Chan.* 256,) where it was decreed that the wife who had contracted debts *dum sola* being dead, the husband should account for what he had received with her, and should be so far liable to her debts; it being insisted that one precedent relieving a creditor, was more to be regarded than three to the contrary. But these cases were disregarded or overruled, and the principles of the common law sustained and applied under the like circumstances, in *Earl of Thomard* v. *Earl of Suffolk*, (1 *P. Wms.* 470,) and in *Heard* v. *Stamford*, (3 *id.* 409.) The last case was this. A *feme sole* was indebted to her sister in £50, by note. She married and brought a personal estate to the value of £700 to her husband, with whom

Vanderheyden *v.* Mallory.

she lived about a year and a quarter, and then died. The cred-
itor by note never recovered judgment against the husband and
wife, and the debt remained unpaid. The husband, on the
wife's death, administered to the wife. The sister married,
and with her husband brought a bill against the defendant,
and finding that the *choses in action* of which the wife died
possessed were not sufficient to pay the £50 debt which the
wife owed *dum sola;* it was prayed that the defendant, the
husband, for so much as he had received out of the clear per-
sonal estate of the wife upon his marriage, should be made
liable to answer the plaintiff's demand. And it was insisted
to be but common reason and justice, that as the wife was the
owner of a visible estate upon the credit of which the plaintiff
might have entrusted her; so he that had such estate should
pay the debt, which he might well afford to do; that it would
be a case full of hardship, if a *feme sole* who, in ready money,
goods, jewels, &c. might be worth £10,000, and might owe
£1000, should afterwards marry and die, that on her death
her husband should go away with the £10,000, and not
be obliged to pay one farthing of his wife's debts. This would
prove of the most pernicious consequences to the creditors;
whereas, on the other hand, the husband could have no rea
son to complain of being liable to answer their demands, as
far as he had received a fortune with his wife; and the cases
of *Freeman* v. *Goodham* and *Powell* v. *Bell* were cited to show
that such equity had been established under like circumstances.
But Lord Chancellor Talbot said it was extremely clear, that
by law the husband was liable for the wife's debts only during
coverture, unless the creditor recover judgment against him
in the wife's lifetime; and that he did not see how any
thing less than an act of parliament could alter the law; that
the wife's *choses in action* were assets, and would be liable, but
they, it seemed, were not sufficient in the principal case to an-
swer the demands; that in the case of *Freeman* v. *Goodham*
there was some reason for the court to be provoked, when the
goods themselves continued, after the death of the wife, in the
hands of the husband, who notwithstanding refused to pay fu

them. If he relieved against the husband because he had sufficient with his wife wherewith to satisfy the demand in question; by the same reason, where a feme indebted *dum sola* afterwards marries, bringing no fortune to her husband, and judgment is recovered against the husband, after which the wife dies, he ought to grant relief to the husband against such judgment, which he said was not in his power; consequently there could be no ground for a court of equity to interpose in the case before him; that if the law, as it then stood, be thought inconvenient, it would be a good reason for the legislature to alter it; but till that was done, what was then law must take place. The remarks of the lord chancellor in that case may well be applied to the circumstances of this case.

It is extemely clear, that by law the wife, or her separate property, are not liable for the debts which she owed *dum sola*, during the life of her husband; and I do not see how any thing less than an act of the legislature can change the law. And from the circumstances of this case, I do not discover any reason even, for the court to be provoked on account of the existence of such rule of law; as it seems that the wife carried to the husband a large personal estate irrespective of her separate property, the same to which she was entitled and which induced the complainants to give her the credit, and that nearly five years elapsed after the marriage, before the husband applied to be decreed a bankrupt, during which period it is fair to presume the complainants might have collected their debt, by proceedings against the husband and wife, out of the property which the husband received or might have received by the marriage, and which has passed to the assignee in bankruptcy; and even there, the complainants have neglected to go for their share of it. Upon the whole, I think the decree of the vice chancellor, and the affirmance of it by the chancellor, were erroneous, that it should be reversed, and the complainants' bill be dismissed with costs.

                         Ordered accordingly.