## ALICE P. EVERTS v. GILBERT T. EVERTS.

*Deeds—Parol trusts in land—Passive trust—Title of beneficiaries.*

1. Trusts in land for the benefit of third persons cannot be established by *parol* understandings with the grantor. How. Stat. § 6179; *Shafter v. Huntington*, 53 Mich. 310.

   So *held*, where land was conveyed in trust for the benefit of the grantor and his wife during their natural lives (held to be a passive trust), and with a parol understanding, as claimed by the grantee, that on the death of the beneficiaries he was to convey the land to his daughter, a niece of the grantor.

2. A deed from a husband to his brother of 160 acres of land, containing a declaration that the lands are conveyed in trust for the benefit of the grantor and his wife, who are to have the use and benefit of the land, being the income thereof, during their natural lives, and from which deed the word "heirs," was stricken before its execution, is held to have created a *passive* trust; that the title of the grantee was merely nominal; and that the legal title passed at once to the beneficiaries.

Appeal from Shiawassee. (Newton, J.) Argued April 9, 1890. Decided April 18, 1890.

Bill to compel conveyance to complainant of 160 acres of land deeded to defendant by complainant's husband, who afterwards conveyed it to her. Complainant appeals from decree declaring the *latter* deed valid as to the homestead 40 acres, which decree is reversed, and a decree entered in this Court in accordance with the prayer of the bill. The facts are stated in the opinion.

*S. S. Miner* (*G. R. Lyon*, of counsel), for complainant, contended:

1. The alleged parol trust was void; citing How. Stat. § 6179; *Bernard v. Bougard*, Har. Ch. 130; *Wright v. King*, Id. 12; *Trask v. Green*, 9 Mich. 366; *Enos v. Sutherland*, 11 Id. 541; *Groesbeck v. Seeley*, 13 Id. 345; *Newton v. Sly*, 15 Id. 396; *Brown v. Bronson*, 35 Id. 418; *Shafter v. Huntington*, 53 Id. 310.

2. The special clause in the deed operated to give to the beneficciaries the actual use and possession of the land; citing *Mandlebaum v. McDonell*, 29 Mich. 84; *Parks v. Parks*, 9 Paige, 107.

3. The trust was a passive one; citing How. Stat. § 5565; *Burdeno v. Amperse*, 14 Mich. 97; *Church v. Clark*, 41 Id. 730; *Calder v. Moran*, 49 Id. 14; and in every case of a naked trust the statute executes it, and places the legal estate in the *cestui que trust;* citing *Thompson v. Waters*, 25 Mich. 234; *Steevens v. Earles*, Id. 44; and cases above cited.

*C. F. Collier* (*Hugh McCurdy*, of counsel), for defendant, contended:

1. How. Stat. § 5730, dispenses with the use of the word "heirs" in order to create an estate of inheritance in the grantee, and provides that an intention to convey a less estate shall be expressed in the deed.

2. Uses, annexed to a perfect gift, however gratuitous, are enforced; citing *Jackson v. Cleveland*, 15 Mich. 94; *Weare v. Linnell*, 29 Id. 224; *Palmer v. Sterling*, 41 Id. 218; *Barber v. Milner*, 43 Id. 248.

MORSE, J. The complainant was married in April, 1881, to Eugene O. Everts, a brother of defendant. Immediately upon such marriage she and her husband moved upon a farm, of 160 acres, in Shiawassee county, and made it their home until May, 1886. This farm was received by Eugene O. Everts as part of his distributive share of his father's estate.

In March, 1883, Eugene went to Oakland county, to visit his brother, and while there executed and delivered to the defendant a warranty deed of this farm. The expressed consideration of the deed was one dollar, but there was no real consideration. The deed, in the body, purported to be given by "Eugene Everts and Alice Everts, his wife," but complainant refused to sign it when it was brought to her for her signature. The word "heirs" was stricken out before execution, so that the grant was to Gilbert T. Everts and his assigns. After

the description, and before the *habendum* clause, was the
following:

"The above-described lands are hereby conveyed to the
said Gilbert T. Everts by said Eugene Everts and Alice
Everts in trust for their benefit, and to be held by said
second party [Gilbert T. Everts] for the use and benefit
of first parties [Eugene and Alice Everts]; and it is fully
understood that said first parties are to have the use and
benefit of said land, being the income thereof, during the
natural lives of both the said first parties."

The evidence shows that, until 1886, Eugene worked
and managed the farm the same as if this deed had not
been made, and Gilbert exercised no control over it. In
May of that year, Eugene moved to Burton, a small vil-
lage near Owosso, renting the place for two years to one
Monroe upon shares,—each to furnish one-half and re-
ceive one-half. While Gilbert was consulted about this
leasing, it is plain enough that he exercised no authority
or control in the matter. One-half of the produce, while
Monroe was tenant, was paid or delivered to Eugene or
complainant.

Eugene died December 18, 1887. The complainant
testifies that before his death he requested Gilbert to
deed the premises back to him. Gilbert made no reply,
but promised to come and see him the next week, and
talk about the matter, but did not do so. December 17,
1887, the day before he died, Eugene, by warranty deed,
conveyed the premises to complainant.

She filed her bill in the circuit court for the county
of Shiawassee, in chancery, in January, 1889, alleging
that the deed to Gilbert was executed by her husband
while he was "on a spree," and intoxicated, and when
he did not comprehend what he was doing, and could be
easily persuaded; that there was no consideration for the
deed, and that Eugene was persuaded by Gilbert to
execute it upon the pretense that it was a mere trust-

deed for the benefit of Eugene and his wife, and that said Gilbert would take no title in said land as against them; and Gilbert further represented that the only object in deeding the land was to place it in such shape that Eugene could not fool it away while drunk, and to prevent creditors and others from taking undue advantage of his weakness. She further averred that Gilbert promised Eugene that whenever he became a sober man he could have the title of the land back again. She asked a decree that Gilbert be required to convey the premises to her free and clear of all incumbrances, except what amount said Gilbert might be found to have paid for her husband or on his account, which she expressed a desire and willingness to pay.

Gilbert answered, denying that the deed was procured as charged by complainant, or that there was any understanding or agreement that he should ever reconvey the premises to Eugene.

He avers that Eugene went to Holly, Oakland county, and there, of his own free will and accord, executed this deed without any suggestion or solicitation on the part of the defendant, and that it was so made by him for the purpose of saving unto himself, and unto the said complainant, the use, benefit, and income of the said lands during the natural life of himself and that of the said complainant, and that defendant was to hold the said lands in trust for that purpose, and at the death of the said Eugene O. Everts, and the said complainant, he was to deed the said lands to Carrie May Everts, a daughter of this defendant; and that at the time of the execution of said deed, and in presence of one Patterson and the witnesses to said deed, he so declared and made a trust, in parol, to the effect that, after the death of himself and the said complainant, defendant was to deed, and convey

80 MICH—15.

the said lands in fee-simple to the said Carrie May Everts.

He denies that Eugene ever requested him to deed back the premises. He admits that Eugene had the possession and the control of the premises, either by himself or his tenant, until his death; and claims the benefit of a cross-bill, and prays that the deed be declared valid, and the parol trust to Carrie May Everts established, and the deed from Eugene to complainant be decreed void.

The circuit judge decreed that the deed from Eugene to complainant was valid as to the portion of the premises used and occupied as a homestead, and invalid as to the balance; that the deed to Gilbert conveyed the title in fee of the lands not embraced in the homestead to Gilbert, subject to the full payment of the net income of such lands to complainant during her natural life.

The testimony shows that up to within a year or so of his death Eugene was an intemperate man, and a spendthrift while in liquor, and that he had squandered some $3,000 in cash received from his father's estate. There is ground for believing that the deed was made to Gilbert for the express purpose of preventing the possible waste of his land, and loss of his home.

Much evidence was given of declarations made by Eugene to various persons supporting the claim of a parol trust, and that he intended, when he and his wife were dead, that the farm should go to Carrie May Everts. But such parol trust, if it existed, is forbidden by our laws, and cannot be enforced. How. Stat. § 1679; *Shafter v. Huntington,* 53 Mich. 310 (19 N. W. Rep. 11), and cases cited.

The trust in this deed was an express one. Such a trust might be created, under our statutes, for the following, among other, purposes:

"To receive the rents and profits of lands, and apply them to the use of any person, during the life of such

person, or for any shorter term, subject to the rules prescribed in the last preceding chapter [chapter 213."] How. Stat. § 5573, subd. 3.

It is contended by complainant's counsel that the trust created by this deed to Gilbert does not come within the provision of our statute above quoted; that it is a passive, and not an active, trust; that under it the trustee had nothing to do but to hold the title for the beneficiary.

It must be conceded that the clause in the deed creating the trust does not, in express terms, authorize or empower the trustee to receive the rents and profits of the land; and it is evident, from the conduct of the parties, that it was not intended that Eugene should give up the possession of the premises, or put its management into the control of Gilbert. Gilbert had nothing to do with the premises, except to hold the title, until Monroe moved off, in 1888, when he put his brother William in possession, to hold the place for him, five years after the execution of the deed. The complainant and her husband were to have the "use and benefit" of said lands during their natural lives; and such use and benefit, it seems clear from the deed itself, was to be the control and possession and management of the farm. Gilbert did nothing except to hold the title, and the striking of the word "heirs" from the deed has some significance in construing the trust. If we considered the deed or trust at all ambiguous, so that we would be justified in examining the surroundings and circumstances of its execution or creation, and the acts of the parties, in order to determine its true intent and meaning, we should, upon such examination, be forced to the same conclusion that we reach from the language of the deed or trust as written.

We are satisfied that the trust was a passive one, and

that the legal title in the lands passed at once to the beneficiaries. How. Stat. §§ 5565–5567. The title of Gilbert must be regarded as merely nominal, and not connected with any power of actual disposition or management in relation to the lands. The complainant, holding a deed from her husband, is now the sole owner in fee of the premises.

The decree of the court below must be reversed, and a decree entered here in accordance with the prayer of the bill, in favor of complainant, with costs of both courts.

The other Justices concurred.