GEORGE H. DYETT, Appellant, v. CENTRAL TRUST COMPANY, Trustee, etc., et al., Respondents.

Under the common law a wife had complete capacity to pledge or incumber her separate estate, or an interest settled to her separate use, whether her interest was legal or equitable, unless restrained by the instrument of settlement.

The power of a beneficiary in a trust created before the Revised Statutes were enacted, to alien, was not taken away or abridged by the provision of the Statute of Uses and Trusts (1 R. S. 730, § 63), providing that "no person beneficially interested in a trust for the receipt of rents and profits of lands, can assign or in any manner dispose of that interest." That provision has no application to a prior trust.

Courts have power in a proper case to apportion as between a life interest and remaindermen the proceeds of a sale covering both interests.

Pursuant to a marriage settlement executed in 1819, certain real estate belonging to the wife was conveyed by her to trustees in trust, with authority to sell and convey, with written consent of the husband and wife, "in such manner as to convey the fee" to the purchaser, and to invest the proceeds in other real estate, or in securities so as to produce the best annual income without lessening the principal; the trustees to permit or authorize the husband to receive the rents and profits during life. In case of his death, leaving the wife surviving, or of his becoming insolvent, the trustees were directed to pay over the rents and profits to the wife and her assigns during life, and after her death it was directed that the trust property and the proceeds thereof be equally divided between the children. Subsequently, pursuant to an order of the court, granted on petition of the trustees, the husband and the wife, the trustees, with the consent of the husband and wife, mortgaged the property. The

husband thereafter became insolvent. The mortgage was fore-closed, and upon sale under the decree the property was bid off for $39,500, its full value. The purchaser refused to complete the purchase on the ground that while his purchase was of the whole title, the mortgage only bound the life interest of the wife. The premises were thereupon readvertised; the children filed a bill to restrain a resale; but pursuant to a subsequent arrangement between all the parties they were resold for $23,700, the ascertained value of the life estate, and simultaneously the trustees, for the consideration of $15,800, conveyed to the purchaser the remainder. *Held,* that the legal effect of the marriage settlement was to vest the legal title in the trustees; that the wife had power to charge her life estate by mortgage, and a valid charge was created thereon by the mortgage; that an absolute title in fee was conveyed to the purchaser, the life estate by the foreclosure sale and the remainder by the trustees' deed; that the sale made by them was, under the circumstances, a valid exercise of the power.

(Argued October 5, 1893; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made at the August term, 1892, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This was an action brought by plaintiff in 1888, as one of the heirs at law of Jessie Ann Dyett, to recover possession of one undivided twenty-fourth part of the premises 194 Broadway, in the city of New York.

Jessie Ann Hunt intermarried with Joshua Dyett. prior to September 19, 1821 ; she was then about twenty years of age. Marriage articles, dated September 21, 1819, were entered into before the marriage between said parties, and William Hammersley and Michael Dyett, as trustees, by which the premises in question, which then belonged to Miss Hunt, were conveyed to the trustees for her benefit upon certain trusts therein declared. Afterwards, on September 19, 1821, Mrs. Dyett having come of age, and for the purpose of curing defects and mistakes in the marriage articles, a deed of trust was executed between the same parties.

It recites the main provisions of the marriage articles and that " the said Jessy Ann Dyett hath attained the age of

twenty-one years and is desirous, by and with the consent of the said husband, of curing the defects and mistakes in the trusts contained in the aforesaid articles, and of conveying, granting, settling and assuring the aforesaid messuage and lot of land, or the proceeds thereof, according to what was originally intended, and as such intention is hereafter expressed."

The trusts declared were the same as in the marriage settlement and are substantially as follows :

*First.* To sell and convey the premises with the written consent of the husband and wife, and to invest the proceeds of the sale in other real estate, or upon security ; with power to change the investments from time to time, with the like consent, so as to produce the best annual income without lessening the principal of the estate.

*Secondly.* To permit the husband to receive the rents and profits for the use of himself and wife, and if he survived her to receive the same to his own use during life to enable him to educate and maintain the children of the marriage, if there should be any, and if there were no children then to his own use forever.

*Thirdly.* In case of the husband's death, leaving his wife surviving, then to permit her to receive the rents, profits and income to her own use for life, and to enable her to maintain the children of the marriage, and if no children, then to her own use forever, and if there should be children or the issue of such children of the marriage living at the death of the wife, then to their use forever.   It was provided that the husband should not alien or dispose of the rents or income, but should apply the same to the common use of himself and wife, and that the same should not be liable for the payment of his debts, and in case of his making any sale or other disposition of such rents or income, or of his becoming insolvent, it was directed that they should be paid over by the trustees to the wife to her sole and separate use and in like manner as if she were a *feme sole*.

On April 8, 1822, the trustees petitioned the Court of Chancery for leave to mortgage the trust premises, and

obtained two orders made by Chancellor KENT April 8, and April 22, 1822, authorizing such mortgages to be made with the written consent of the husband and wife, the proceeds to be held subject, in every particular, to the trust declared by the trust deed.   Two mortgages were accordingly made, one to secure $9,000 and interest, the other to secure $15,000 and interest.   The proceeds of these mortgage loans were used by the trustees in the purchase of a factory in Dutchess county, as a change of investment.   Dyett was placed in charge of the factory as agent.   In 1827 Dyett became insolvent.   In February, 1831, William Hammersley, then sole trustee, and Mr. and Mrs. Dyett presented a petition to the chancellors for authority on their consent to borrow $18,000 on the premises and give a mortgage therefor, and an order was made to that effect.   The new mortgage was to be given to pay off the two old ones.   In April, 1831, the mortgage was accordingly executed for $18,000 to the Globe Insurance Company.

In December, 1831, the mortgagee foreclosed the mortgage and obtained a decree for the sale of the premises.   In 1848 the sheriff sold the premises at auction, pursuant to the decree, to Leroy M. Wiley for $39,500 ; he refused to complete the purchase on the ground that he would not acquire title in fee by the sale and the deed thereunder, because the mortgage was a lien only on Mrs. Dyett's life estate, and that her children, then *in esse*, were not bound by the decree of foreclosure or any sale thereunder.   At this time Mrs. Dyett had four children ; her husband had died in 1843 ; and except this house and lot she had no other property.

Upon Wiley's refusal to accept the title, the mortgagee readvertised the property for sale, and then the infant children, by their next friend, commenced a suit in equity to restrain the sale, asking that the sale made should be carried into effect so as to vest the title in Wiley, the purchaser, in fee simple, and that the purchase money should be applied and invested according to the rights and interests of the several parties.   Subsequent thereto an arrangement was made between Wiley, the mortgagee, Mrs. Dyett and the trustee, that Wiley should

purchase Mrs. Dyett's life estate under the decree of foreclosure for $23,700 (the value of the estate by the Northampton tables), and thereupon the trustee, at her request, would sell and convey to Wiley, the purchaser, the fee of the premises, subject to the rights acquired under the foreclosure sale, for $15,800. To carry out that arrangement, in February, 1849, the sheriff sold the life estate of Mrs. Dyett for $23,700, and executed a deed to Wiley, the purchaser. Thereupon Mrs. Dyett gave her consent that the trustee should sell the property. Accordingly, the trustee and Mrs. Dyett executed a conveyance to Wiley, reciting the trust deed and power of sale, the death of Joshua Dyett, the consent of Mrs. Dyett, and that the trustee and Mrs. Dyett "have sold and agreed to convey to the party of the third part all the residue and remainder after the termination of the life estate of the said Jessie Ann Dyett, and all the estate, right, title and interest" of the grantors to the premises in question, "subject to an estate for the life of Jessie Ann Dyett, recently sold under the foreclosure of a mortgage executed by her."

Further facts are stated in the opinion.

*A. R. Dyett* for appellant. Under the terms of the trust deed the trustees took no estate in the land, and were simply grantees of the power in trust to sell, but Joshua Dyett and Jessie Ann Dyett both took successive legal life estates in the land until the insolvency of Joshua Dyett, when the trustees were to pay to her the rents and profits. (*N. Y. D. D.* v. *Stillman,* 30 N. Y. 174; *Welch* v. *Allen,* 21 Wend. 147; *Rogers* v. *Ludlow,* 3 Sandf. 104; *Nicoll* v. *Walworth,* 4 Den. 385; *McCosker* v. *Brady,* 1 Barb. Ch. 329; Lewin on Trusts, 221, § 2; *Wright* v. *Miller,* 8 N. Y. 10; 1 Sandf. 108; 4 Barb. 600.) Mrs. Dyett's equitable interest in this active trust was inalienable at the time she executed each of the mortgages. (1 R. S. 730, § 63; *L'Amoreux* v. *Van Rensselaer,* 1 Barb. Ch. 34; *Rogers* v. *Ludlow,* 3 Sandf. 104; *McSorley* v. *Wilson,* 4 id. 515; *Genet* v. *Foster,* 18 How. Pr. 50; *Conger* v. *Conger,* 5 Barb. 225, 264; *Nicoll* v. *Walworth,*

4 Den. 385 ; *McCosker* v. *Brady*, 1 Barb. Ch. 329 ; 1 N. Y. 214.) All the mortgages, as far as the trustees are concerned, were absolutely void. ( *Van Epps* v. *Van Epps*, 9 Paige, 237 ; *Douglas* v. *Cruger*, 80 N. Y. 15 ; *Wood* v. *Mather*, 38 Barb. 473 ; 44 N. Y. 249 ; *Watson* v. *Bonnel*, 2 Sandf. 405 ; *Pitcher* v. *Carter*, 4 id. 1 ; *Anderson* v. *Mather*, 44 N. Y. 249.) Neither the orders of Chancellor KENT nor the order of Chancellor WALWORTH were effectual to confer a power on the trustees to mortgage the land so as to effect the remainder in fee of the children of Joshua Dyett and Jessie Ann Dyett, no such power being contained in the trust deed. The chancellor had no power to confer any such power on them. He could not change the terms, force or effect of the trust. (Gerard on Titles, 454 ; 2 R. S. 195, § 176 ; *Rogers* v. *Dill*, 6 Hill, 415 ; *Williamson* v. *Berry*, 8 How. [U. S.] 556.) The defendant contended and the court decided that the conveyance of that remainder in fee, executed on the 28th day of February, 1849, by Jessie Ann Dyett and the trustees to Leroy M. Wiley simultaneously with the sheriff's deed on the foreclosure sale of Mrs. Dyett's life estate, was a valid exercise of the power of sale in the trust deed, and, therefore, vested a title in fee simple to the land in Wiley. This is erroneous. (Lewin on Trusts [Am. ed., 1888, with Flint's Notes], 918, 922, 923 ; *Pitcher* v. *Carter*, 4 Sandf. 1, 18 ; *Chamberlain* v. *Taylor*, 36 Hun, 27 ; *Harty* v. *Doyle*, 49 id. 410 ; *C. L., etc., Co.* v. *K. N. Co.*, 4 N. Y. S. R. 392 ; *M. L. Ins. Co.* v. *Shipman*, 108 N. Y. 24 ; *Harvy* v. *Brisbin*, 50 Hun, 379, 380 ; *Bennet* v. *Rosenthal*, 11 Daly, 86 ; Gerard on Titles [3d ed.], 453, 454 ; *Latrobe* v. *Tyson*, 42 Md. 325 ; *Briggs* v. *Davis*, 20 N. Y. 22 ; *Sharpsteen* v. *Tillou*, 3 Cow. 651, 660 ; *Hetzel* v. *Barber*, 69 N. Y. 12, 13 ; *Bruno* v. *Meigs*, 64 id. 506 ; *Champlin* v. *Haight*, 10 Paige, 274 ; *Scholle* v. *Scholle*, 113 N. Y. 273 ; *McPherson* v. *Smith*, 49 Hun, 254 ; *Sweeny* v. *Warren*, 127 N. Y. 128 ; *Jeanette* v. *Hunt*, 113 id. 158 ; *Russell* v. *Russell*, 36 id. 581 ; *Hunt* v. *Townshend*, 31 Md. 338 ; *Pendleton* v. *Fay*, 2 Paige, 202 ; *Griswold* v. *Perry*, 7 Lans. 98 ; *In re McComb*, 117 N. Y. 383 ; *Brevoort* v. *Grace*, 53 id. 245 ; *Powers* v. *Bergen*, 6 id. 358 ; *Douglass* v.

*Cruger*, 80 id. 15; *Waldron* v. *McComb*, 1 Hill, 111, 114; Hill on Trustees [3d Am. ed.], 728.) The purchaser, Wiley, purchasing under a power in trust was bound to inquire into the lawful execution of the power and acquired no title, for the reason that he had knowledge of its unlawful exercise. (*Pendleton* v. *Fay*, 2 Paige, 202, 205; *Champlin* v. *Haight*, 10 id. 274; *Wetmore* v. *Porter*, 92 N. Y. 76; *Waldron* v. *McComb*, 1 Hill, 111, 114; *N. R. Bank* v. *Aymar*, 3 Hill, 262; *Greenwald* v. *Perry*, 7 Lans. 98; *Lee* v. *Horton*, 104 N. Y. 538.) The court below made a mistake, and is clearly in error in stating that the record of Wiley's title which the defendant acquired from the purchaser from him showed to that purchaser and the defendant an apparently proper exercise of the power of sale in the trust deed, and in the necessary inference that the facts showing that the power of sale was not properly exercised, and that the trustees had no power to exercise it in the manner in which they did, and the diversion of the proceeds of the sale of the property did not appear on that record. (*Pendleton* v. *Fay*, 2 Paige, 205; *Gilbert* v. *Peteler*, 38 N. Y. 166; *Lee* v. *Horton*, 104 id. 541; *N. A. C. Co.* v. *Dyett*, 7 Paige, 9.) The trustees had no power to sell the property, except for the purpose specified in the trust deed, and they did not exercise the power for any such purpose, so that, assuming that this did not appear on the record, a *bona fide* purchaser for value without notice would not be protected. (*Griswold* v. *Perry*, 7 Lans. 103; *Briggs* v. *Palmer*, 20 Barb. 392; *Waldron* v. *McComb*, 1 Hill, 115.) The court overlooked the distinction between such a case as the present and a case where a *bona fide* purchaser for value from a grantor holding the legal title is protected from the claim of a third person holding a latent equitable title only. (Story's Eq. Juris. [12th ed.] § 64c; *Murray* v. *Ballou*, 1 Johns. Ch. 575; *Jewett* v. *Palmer*, 7 id. 65, 68; *Murray* v. *Finster*, 2 id. 157; *Denning* v. *Smith*, 3 id. 345; *Seymour* v. *McKinstry*, 106 N. Y. 230; *Galatian* v. *Cunningham*, 8 Cow. 361.) On the trial the defendant claimed that the remainder in fee did not

vest in the children upon the death of their mother without a conveyance to them by the trustees, though they were dead. The answer is : By the trust deed, the trustees, after Mrs. Dyett's death, were not required to convey to the children, but to hold to their use, and no conveyance to the children was necessary. (*In re De Kay,* 4 Paige, 403 ; 30 N. Y. 174 ; 4 Den. 385 ; 103 N. Y. 565 ; 1 R. S. 750, § 11 ; 3 id. [2d ed.] 579, 585 ; *Anderson* v. *Mather,* 44 N. Y. 249 ; *Prentiss* v. *Jansen,* 79 id. 486 ; *Easterly* v. *Barber,* 65 id. 259, 260, 261, 262 ; *Bennett* v. *Austin,* 81 id. 334 ; Gerard on Titles [3d ed.], 453 ; *Shepard* v. *McEvers,* 4 Johns. Ch. 136.)    The court had a right to grant equitable relief. (*Murtha* v. *Curley,* 90 N. Y. 372 ; *Hale* v. *O. N. Bank,* 49 id. 626 ; *Chatfield* v. *Simonson,* 92 id. 217 ; *Bruce* v. *Tilson,* 25 id. 194 ; *Allerton* v. *Allerton,* 50 id. 670 ; *Gould* v. *Cayuga Bank,* 86 id. 83.)

*William Allen Butler* for respondent.    The decision of the chancellor and of the Court of Errors, as to the power of Mrs. Dyett to charge her life estate, were not based upon the orders of the Court of Chancery of 1822 and 1831, but upon the equitable rights of married women in respect to their separate estates, and both courts correctly held that the equitable estate of Mrs. Dyett was alienable. (*Aulme* v. *Tenant,* 1 Br. Ch. Cas. 16 ; *Jaques* v. *Methodist Church,* 17 Johns. 548 ; *Grigley* v. *Cox,* 1 Ves. 517 ; *Pybus* v. *Smith,* Id. 189 ; *Cumming* v. *Williamson,* 1 Sandf. 17, 25 ; *N. A. C. Co.* v. *Dyett,* 7 Paige, 9 ; 20 Wend. 570.)    It is established that the mortgage to the Globe Insurance Company, existing at the time of Chancellor WALWORTH's decree in 1837, in the *North American Coal Company* case, was a valid and subsisting lien on Mrs. Dyett's interest in the Broadway house and lot, because the decree was made in a cause in which all the necessary parties for a determination of that question were before the court.    (7 Paige, 16.)    The validity of the mortgage debts which were paid off and satisfied by the proceeds of the Globe Insurance Company's mortgage is *res adjudicata.* (*Wells* v. *Chapman,* 4 Sandf. 312 ; 13 Barb. 561.)    It is also

established, by the course of adjudication in reference to the trust deed, that Mrs. Dyett's equitable estate for life was not affected by the insolvency of her husband. Under the Revised Statutes, she acquired a legal estate of the same quality and duration as her equitable interest, the naked title which the trustees took being preserved simply as a power in trust. (*N. A. C. Co. Case,* 5 Paige, 9; *Warner* v. *Dyett,* 4 Edw. Ch. 381.) The grant of the estate to the trustees did not entitle them to possession of the trust estate. Joshua Dyett, the husband, was to receive the rents and profits, and the insolvency of the husband did not enlarge the terms of the grant. (*Parks* v. *Parks,* 9 Paige, 106; *Salsbury* v. *Parsons,* 36 Hun, 12; *Le Grande* v. *L'Amoureaux,* 1 Barb. Ch. 18; *Frazer* v. *Western,* Id. 220; *Verdin* v. *Slocum,* 71 N. Y. 345; *Germond* v. *Jones,* 2 Hill, 569, 573.) The provision in the trust deed that the rents and profits of the premises shall not be made liable for the debts of Joshua Dyett, and that in case of his insolvency, they shall be paid by the trustees to Mrs. Dyett for her sole and separate use, did not operate to make the trust an active one under section 48 of chapter 1, title 2, part 2 of the Revised Statutes. (*Hoxie* v. *Hoxie,* 7 Paige, 187.) The deed of February 28, 1849, by the trustees and Mrs. Dyett to Leroy M. Wiley was a valid exercise of the power of sale. (Lewin on Trusts, 573; Perry on Trusts, § 476; *Forshaw* v. *Higgins,* 8 De G., M. & G. 827; *McCurrogh* v. *Wheldon,* 34 Beav. 107; *M. L. Ins. Co.* v. *Woods,* 121 N. Y. 302.) The facts being found that the price paid represented the fair value of the fee of the property, and that the sale at that price was indispensable to secure the very objects contemplated by the trust deed, it was wholly immaterial and a mere matter of form as to how the two separate interests in the property should be conveyed to the purchaser, and the conveyance by the trustees under the power of sale contained in the marriage settlement and the trust deed was a proper execution of the trust. (1 R. S. 732.) Even if Wiley was chargeable with notice of the alleged invalidity of the exercise of the power

of sale by the trustees the present defendants are not affected thereby. The Central Trust Company is an innocent purchaser, and the court below correctly so held. (2 Story's Eq. Juris. [10th ed.] §§ 409, 410; *Dillaye* v. *C. Bank*, 51 N. Y. 345; *Jones* v. *Smith*, 3 Hare, 43; *Acer* v. *Westcott*, 46 N. Y. 384; *C. V. Bank* v. *Delano*, 48 id. 326; *Varick* v. *Briggs*, 6 Paige, 323–329; *Wood* v. *Chapin*, 13 N. Y. 509; *Slattery* v. *Schwannecke*, 118 id. 543.) The plaintiff is in no event entitled to maintain an action at law to recover possession of the premises. ( *Wood* v. *Mather*, 38 Barb. 473; *Anderson* v. *Mather*, 44 N. Y. 249.)

Andrews, Ch. J.    The records of the courts of the state disclose that litigations growing out of the marriage settlement of September, 1821, commenced a few years after its execution and continued until the sale of the property to Wiley, in 1849. He purchased the Broadway lot in that year for $39,500, which concededly was the full value of the fee; and from that time until the commencement of this suit in 1888, a period of nearly forty years, Wiley and his grantees have remained in undisturbed possession of the property, claiming absolute title.

This action is brought by one of the children of Mrs. Dyett, who died in 1885 at an advanced age. The action proceeds on the ground that the alleged title of Wiley and his grantees under the foreclosure of the Globe Insurance Company mortgage, and the conveyance by the trustees, are invalid, because Mrs. Dyett, in 1831, when the mortgage was given, had no power to charge her interest in the land, and on the further ground that, even if the mortgage bound her life estate, the sale and conveyance by the trustees of the remainder, separated from the life estate, although made with her consent, was not a good execution of the power of sale given by the marriage settlement.

The discussion at the bar has taken a wide range, and the character of the title in the trustees under the marriage settlement, and also as it was affected by the Revised Statutes subsequently enacted, has been considered by counsel with great

learning and ability. It is supposed by the counsel for plaintiff that if he should succeed in establishing that Mrs. Dyett's interest in 1831 was that of a beneficiary of an express trust, within the meaning of the Revised Statutes, it would follow that under section 63 of the article of the Revised Statutes on uses and trusts she was incapable of mortgaging or aliening that interest, or in any way creating a charge enforcible against the land or binding her equitable interest, and that, therefore, the mortgage to the Globe Insurance Company, executed in 1831, and under which the life estate of Mrs. Dyett was sold to Wiley in 1849, was void. I entertain no doubt that under the marriage settlement the trustees took the legal title to the Broadway lot, and that the persons who became successively entitled to the rents and profits took an equitable life interest therein, with remainder on the death of Mr. and Mrs. Dyett to their children. The appointment of trustees in marriage settlements to take the title to the lands embraced in the settlement, to protect the interests created thereby, was the common practice. By the marriage settlement in question, not only was there a formal conveyance of the Broadway lot to the trustees, but they were invested with a power of sale and to reinvest the proceeds in other lands or upon real or personal security, and they were directed to permit Mr. Dyett to receive the rents and income, or in case Mrs. Dyett became entitled thereto under the provisions of the settlement, to pay the same to her for her sole and separate use, and on the death of Mr. Dyett surviving his wife, to hold the property to the use of the children of the marriage, with like direction on the death of Mrs. Dyett in case she survived her husband.

It may be true, as claimed by the counsel for the plaintiff, that the presence in the trustees of the legal title to the property embraced in the settlement, was not indispensable to enable them to perform the acts and execute the authority contemplated. But there can be no doubt, I think, that the legal effect of the instrument was to vest the legal title in the trustees. The trust created was not one which came within

the purview of the Statute of Uses. That statute applied to strictly formal trusts, and where any agency or authority was vested in the trustee, the statute did not execute the use and vest the legal estate in the beneficiary. (COMSTOCK, J., *Downing* v. *Marshall*, 23 N. Y. 379; Lewin on Trusts, 246.) The learned counsel for the plaintiff insists that the trustee originally took no title, and this insistance was made apparently for the purpose of establishing the invalidity of the mortgages executed by the trustees in 1823, for the payment of which the mortgage of 1831 was executed. He further claims that on the enactment of the Revised Statutes the interest of Mrs. Dyett became, by some metamorphosis not explained, changed from a legal life estate into an interest as a beneficiary of a trust to receive the rents and profits of land, and that the trustees then, for the first time, by operation of law, became vested with the legal title. This contention cannot be supported. The interest of Mrs. Dyett at all times was equitable and not legal, and she having, by the insolvency of her husband in 1827, become entitled under the terms of the settlement to the whole rents and profits, she had thereafter, at any time, whether before or after the Revised Statutes, the power to charge her equitable interest by lien or mortgage.

Under the common law a wife had complete capacity to dispose of, pledge or incumber her separate estate, or an interest settled to her separate use, whether her interest was legal or equitable, unless restrained by the instrument of settlement. (*Hulme* v. *Tenant*, 1 Br. Ch. Cas. 16; *Jaques* v. *Methodist Church*, 17 Johns. 548; *Vanderheyden* v. *Mallory*, 1 N. Y. 452; *Yale* v. *Dederer*, 18 id. 265; 2 Story Eq. § 1388 *et seq.*) This right, which was vested in Mrs. Dyett, when the Revised Statutes were enacted, was not taken away or abridged by section 63 of the article on uses and trusts. That section which disables the beneficiary of a trust for the receipt of the rents and profits of lands, from aliening his interest, has no application to a trust created prior to the Revised Statutes. The concluding section of the chapter containing the article on uses and trusts, declares that: "None of the provisions

of this chapter, except those converting formal trusts into legal estates, shall be construed as altering or impairing any vested estate, interest or right, or as altering or affecting the construction of any deed, will or other instrument, which shall have taken effect at any time before this chapter shall be in force as a law." The power of a beneficiary in a trust created before the Revised Statutes, to alien, was plainly a right reserved from their operation. That Mrs. Dyett had the right to charge her separate estate or interest in the land, was expressly adjudged in the case of *North American Coal Co.* v. *Dyett* (7 Paige, 9), one of the litigations connected with this trust, as also in the case of *Warner* v. *Hoffman* (4 Edw. Ch. 381). In the case in Paige the validity of the Globe Insurance Company's mortgage was recognized by making the charge established in that case subordinate to the lien of the mortgage. The validity of the mortgage was also adjudged in the foreclosure action. Even if these adjudications are not binding on the children of Mrs. Dyett as *res adjudicata*, they not having been parties to those actions, yet they should be deemed controlling and should be followed unless clearly erroneous. I think those cases were correctly decided, and that there is no ground for questioning the capacity of Mrs. Dyett to charge her life estate by mortgage, and that a valid charge was created thereon by the mortgage in question. So far, therefore, as the plaintiff's alleged title rests upon the claim that the mortgage was an invalid instrument and did not bind Mrs. Dyett's life interest in the Broadway lot, and that, therefore, a title derived under foreclosure did not pass that interest to Wiley, the purchaser, it cannot be supported.

The other contention on the part of the plaintiff is that the deed of February 28, 1849, from the trustees to Wiley, in which Mrs. Dyett joined, purporting to convey the remainder in the Broadway lot, subject to the life estate of Mrs. Dyett therein, "recently sold under a foreclosure in the Supreme Court of a mortgage by her, executed on the premises," was not a good execution of the power of sale conferred on the trustees by the marriage settlement. The particular ground

upon which the plaintiff relies in support of this claim is that by a true construction of the power of sale conferred on the trustees by the marriage settlement, it could be exercised only by a sale of an absolute fee in possession, and that the trustees could not sell the remainder separated from the life estate of Mrs. Dyett. The trustees were given power to sell and convey to a purchaser, "in such manner as to convey a fee," and they were authorized to invest the proceeds to the end "that the best annual interest be made thereon, without lessening the principal." It is said that assuming the validity of the mortgage as a charge on Mrs. Dyett's life estate, nevertheless the purchaser on the foreclosure was substituted simply to her right to receive the rents and profits of the land during her life, and that the foreclosure did not affect the power of the trustees to sell the entire fee, and that on such sale being made the right of the purchaser would attach to the proceeds of the sale made by the trustees, of which the purchaser could claim the income only during the life of Mrs. Dyett, leaving the whole principal to go to the children on her death. It will be observed that the alleged restriction of the power of sale is not found in any express words. The trustees were authorized to sell "in such manner as to vest the fee in the purchaser." These words were inserted apparently to render it clear that the power extended to a sale of the fee of the land and not for the purpose of defining how that purpose should be accomplished. Accompanying the authority for reinvestment is a statement of the purpose for which the power was to be exercised, viz.: "To the end that the best annual interest be made, without lessening the principal." This clause seems to have been inserted out of abundant caution, so that the principal should not be sacrificed or hazarded by attempts to enlarge the income. In determining whether the trustees were acting within the power in selling and conveying the remainder to Wiley by their deed of February 28, 1849, it is important that the situation should be considered. Wiley having purchased on the foreclosure of the Globe Insurance Company mortgage,

refused to complete his purchase on the ground that his purchase was of the whole title, and that the mortgage only bound the life interest of Mrs. Dyett. The plaintiff in the foreclosure action thereupon caused the premises to be re-advertised for sale under the decree. At this point the children of Mrs. Dyett, through their guardian, filed a bill to enjoin a re-sale, insisting substantially that the interests of all parties required that the sale should be consummated, and that the sum of $39,500, which had been bid by the purchaser, should be apportioned as between the life interest and the interest in remainder, and a temporary injunction was obtained. Thereafter, by arrangement between all interests, the infants being represented by eminent counsel, the sheriff re-sold the premises, and they were again purchased by Wiley for the sum of $23,700, the value of the life estate of Mrs. Dyett, according to the Northampton tables, and simultaneously therewith the trustees conveyed to Wiley for the consideration of $15,800, the remainder. It is not disputed that these two sums, amounting to $39,500, represented the full value of the lot. These transactions, if valid, vested in Wiley an absolute title in fee, the life estate under the foreclosure and the remainder by deed from the trustees.

By the foreclosure of the mortgage, Wiley, as purchaser, became entitled to all the rights of Mrs. Dyett, the mortgagor, in the lot. She would no longer be entitled to the rents and profits. They would belong to the purchaser on the foreclosure. One of the main purposes of the marriage settlement had thereby been defeated, viz., to enable Mrs. Dyett through the rents and profits of the land to provide for the support of herself and her children, which purpose is declared in the marriage settlement. This purpose of the trust was no longer attainable. The children were deprived of all means of support out of the property, except what might be derived from the sale of the remainder. The present value of the remainder, if realized, would, with interest thereon, in theory of law, represent the value of the whole fee at the termination of the life estate. There were con-

tingencies.   The property might increase or decrease in value.
The trustees, acting in good faith, at the request of Mrs.
Dyett, made the conveyance.   The . case is anomalous and
stands upon peculiar facts.   It is not necessary to declare any
general rule as to the power of a trustee under a limitation
for life with remainder over, having a general power of sale,
to sell the several estates in the land separately, or having sold
the entire fee, to adjust the life interest by the payment of a
gross sum out of the purchase money.   Courts have undoubted
power in a proper case, to apportion, as between a life interest
and remainderman, the proceeds of a sale covering both
interests.   (*Clark* v. *Seymour*, 7 Sim. 67; *In re Cooper*, L. R.
[4 Ch. Div.] 802.)   The sale made by the trustees in this case
was not in violation of the terms, nor, as we think, of the
spirit of the power conferred, but was a valid exercise of the
power upon an exigency which seemed to· require in the
interests of all parties concerned that the power should be
exercised.   What disposition was made by the trustees of the
sum for which the remainder was sold, does not appear.
Neither Wiley nor his grantees were bound to inquire as to its
application, there being no suggestion of bad faith on their
part.   (2 Rev. St. 730, § 66, and cases in notes.)

For the reasons stated the judgment should be affirmed.

All concur.

Judgment affirmed.