ROTHSCHILD *v.* DICKINSON.

1. TRUSTS—CONSTRUCTION—CONVEYANCES.

A declaration prepared by a trustee, stating the terms on which he holds real property in trust, will be construed most strongly against him.

2. SAME—PASSIVE TRUSTS—STATUTES.

Under a bare declaration of trust, mentioning no duties of the trustee, and containing no qualifications or limitations, title passes to the beneficiary by virtue of 2 Comp. Laws, §§ 8829–8831, abolishing passive trusts.

3. SAME—REMEDIES—QUIETING TITLE—REAL PROPERTY.

A conveyance of realty so held will be decreed at the request of the beneficiaries, because the nominal trust beclouds the title and embarrasses the rights of alienation of the owner.

4. SAME—PAROL EVIDENCE—DEEDS.

Oral testimony may not be used to create a trust in real property. 3 Comp. Laws, § 9509.

5. SAME—ACCOUNTING—COMPENSATION OF TRUSTEE.

Upon the termination of a passive trust by decree of the court, an accounting of receipts and disbursements, and an allowance of reasonable compensation for services rendered by the trustee should be ordered.

Appeal from Wayne; Donovan, J. Submitted January 17, 1912. (Docket No. 20.) Decided March 12, 1912. Rehearing denied June 1, 1912.

Bill by Bertha Rothschild, Harry S. Rothschild, and Louis Rothschild, individually and as executors of the estate of Sigmund Rothschild, deceased, and William Weber, against Don M. Dickinson and others for an accounting and other relief: said Dickinson filed a cross-bill which was dismissed. From a decree for defendants, complainants appeal. Reversed, except as to the dismissal of the cross-bill.

*Keena, Lightner & Oxtoby,* for appellants.

*Thomas A. E. Weadock,* for appellee Dickinson.

*William Look,* for appellee Shaw.

STONE, J.   In the month of April, 1881, there was con-
veyed by quitclaim deeds to the defendant Don M. Dick-
inson certain property in Marquette county known as the
"Edwards Mine," consisting of eleven 40-acre parcels situ-
ated in sections 2, 3, and 10, in town 47 north, range 29
west.   On the 16th of April, 1881, Mr. Dickinson executed,
acknowledged, and delivered, to Sigmund Rothschild, now
deceased, a paper writing as follows:

"These presents are to certify that in the purchase of
an undivided two-thirds of the property known as the
Edwards Mine property in the county of Marquette, and
more particularly described as follows, to wit:   The
southwest quarter of the southeast quarter and the south-
west quarter, and the north half of the southeast quarter,
and the southwest quarter of the northwest quarter of
section two (2).   Also the southeast quarter of the north-
east quarter of section three (3), and the east half of the
northeast quarter of section ten (10), all in township forty-
seven (47) north of range twenty-nine west, all of said
lands being located in the county of Marquette and State
of Michigan, with all personal property thereon and all
interest connected therewith, I have used the means of
and have acted for the benefit of Alexander H. Dey,
David R. Shaw, Sigmund Rothschild and myself.

"And I therefore declare that I hold an undivided one-
quarter of said purchase, or one-sixth of the entire prop-
erty in trust for the said Sigmund Rothschild.

"In witness whereof I have hereunto set my hand and
seal this sixteenth day of April, A. D. 1881.
          [Signed]       "DON M. DICKINSON.   [L. S.]
"In presence of:
     "F. L. DICKINSON.
     "P. M. COFFIN."

This instrument was duly acknowledged on the same
day of its execution before a notary public in Wayne
county.   Similar, if not identical, papers were given by
Mr. Dickinson also to David R. Shaw, one of the defend-

ants herein, and to Alexander H. Dey. At the date of this transaction, and for some time prior thereto, Mr. Dickinson had been engaged in the practice of the law at Detroit. Mr. Shaw had dealt in mining and other lands in Michigan. Mr. Dey was a well-known banker in Detroit, and Mr. Rothschild was a prominent tobacco merchant in Detroit. Mr. Dickinson had been attorney in various matters for Mr. Rothschild and acted as legal adviser in the matter of these lands. Sigmund Rothschild died testate in July, 1907, being a resident of Wayne county, and the Rothschild complainants represent, by devise and by purchase, all of the interest that Sigmund Rothschild had in the lands at the time of his death. The complainant William C. Weber's interest in the matter is by reason of a deed made in September, 1907, from the Rothschilds to him, the purpose of which was to secure to the said Weber the payment of certain indebtedness due from the Rothschilds. Alexander H. Dey died at Detroit in August, 1889, and the defendants Hamilton Dey and Herman Dey, by inheritance, represent all of the interests in the property in question which Alexander H. Dey had at the time of his death.

On the 10th day of May, 1881, Mr. Dickinson, at the request of the other parties interested in the Edwards Mine, conveyed to the Argyle Mining Company, a corporation which was organized about that time, two of the eleven forties included in the deed to Mr. Dickinson, being the southwest quarter of the southeast quarter, and the southeast quarter of the southwest quarter, of said section two. This deed was acknowledged on the 16th day of July, 1881, before a notary public for Wayne county. Of the remaining nine 40-acre parcels, only two forties have been leased by the owners. These two forties are described as the east half of the northeast quarter of section 10. A lease of these two forties was signed by the several parties in interest to Daniel F. Wadsworth, on April 9, 1890; and on January 1, 1894, a lease of the same two forties was given by all of the parties in interest to the

Foxdale Iron Mining Company; and on the 2d day of January, 1902, Mr. Dickinson, describing and signing himself as "Trustee," leased the same lands to the Bird Iron Company. The other seven forties have never been developed or under lease. During some years Mr. Dickinson's public duties called him away from Detroit, and Mr. James H. Cullen acted as his representative in matters connected with this property. No opportunity for a desirable sale of the property presented itself, and, except for the leases referred to, nothing was done in the matter of realizing upon the investment. The Argyle two forties were, as above stated, eliminated during the first year; and, by the terms of the mining lease to the Bird Iron Company, the lessee was required to pay the taxes upon the two forties embraced in that lease. As to the undeveloped seven forties, the taxes were usually paid through Mr. Rothschild's office, and, upon his request, the other parties in interest in the lands reimbursed him for the disbursements thus made. For the year 1896 a tax title on a portion of the lands was purchased by defendant Shaw. This purchase was made for the benefit of the other parties interested in the property, and he claims no interest thereby adverse to the other parties to this suit.

As rentals or royalties under the mining leases were paid to Mr. Dickinson, these moneys were disbursed to the parties interested in the lands. No charge appears to have been made by Mr. Dickinson, in whom the title was placed, or by any of the other parties interested in the lands, for services rendered in their joint enterprise until 1905. In February of that year Mr. Dickinson, who had received two quarterly installments of rental from the Bird Iron Company, aggregating $1,250, distributed to the several parties interested a total of $250, and the balance of $1,000 was accounted for by the receipt of Mr. Cullen for that amount for his services in matters connected with the property. The portion coming to Mr. Rothschild was remitted to him, with an explanation as

to Mr. Cullen's charge. Soon after this time—possibly occasioned by this charge—we find correspondence in the record between Mr. Dickinson and Mr. Rothschild which shows that the latter was requesting a conveyance of his interest. Questions arose as to the form of the deed, and before any deed was signed Mr. Rothschild died. In the course of this correspondence, and in March, 1906, Mr. Cullen, representing Mr. Dickinson, discovered among papers in his possession a deed from Sigmund Rothschild to Henry T. Thurber covering a $\frac{1}{200}$ interest in the property. Mr. Thurber had died in 1904, and had formerly been a law partner of Mr. Dickinson. The existence of this deed is set forth in the answer of Mr. Dickinson, hereinafter referred to. After Mr. Rothschild's death, some efforts were made by the parties in interest to secure a conveyance from Mr. Dickinson, but without success.

The complainants filed this bill in the circuit court of Marquette county, in chancery, asking to have the rights of the several parties in the nine forties, above referred to, determined, and to have the legal title to a one-sixth interest in the property, which represents the Rothschilds' interest, vested in complainants; and praying that the defendant Dickinson may come to an accounting with the complainants as to the amounts which he may have received from rentals or royalties or otherwise in said premises, which have not been paid over to complainants; and that the court may determine the amount thereof, and asking for a personal decree against Mr. Dickinson for the amount. The bill also prays that defendant Dickinson may be ordered to convey to complainants their undivided one-sixth interest in said premises. The answer of defendant Dickinson admits the conveyance of the property to him as stated in the bill of complaint, and that the title to the property has remained in him, excepting as to the two forties conveyed to the Argyle Mining Company; admits the making of the lease to the Bird Iron Company; claims that the services of James H. Cullen rendered in connection with the trust were ren-

dered at the request of the parties interested in said property, and were authorized by the defendant, that they were necessary services, and that the charges were reasonable. He denies the allegation in the bill that during the lifetime of said Rothschild he (Rothschild) did not convey away any part of his said interest, but avers the conveyance to Henry T. Thurber by Rothschild of the $\frac{1}{200}$ interest of his interest in said land by deed, which has been duly recorded. He alleges that said Rothschild agreed to protect said Thurber's interest in said lands; that said Thurber notified defendant of the sale to him; and that the defendant has retained in his possession certain royalties received in November, 1909, because of the interest of said Thurber in said matter. The defendant denies that the title in him was a passive or naked trust, but claims that it was an active trust for the protection of the interests of all the parties interested therein, including himself; that his duty as trustee had at all times been duly performed; and that it was the intention of the parties that his trusteeship should continue until the final sale of the property. Both Mr. Dickinson and Mr. Shaw object to a conveyance of the Rothschild interest, because they claim that the property should be held as one parcel. By his answer Mr. Dickinson denies that complainants are entitled to any relief, and by way of cross-bill asks that his compensation may be determined, claiming that he should be paid a reasonable sum for services as attorney and trustee for said property. By a cross-bill later filed by Mr. Dickinson he prayed, for reasons therein set forth, that the mine lease to said Bird Iron Company be canceled and declared forfeited and terminated. The cause was by stipulation transferred to the circuit court of Wayne county, in chancery. A good deal of testimony in this record relates to this issue raised by cross-bill. But that issue was subsequently settled, and the cross-bill of Dickinson was dismissed, without costs, by consent, in and by the decree of the court below.

We have spent considerable time in perusing the un-

necessarily large record in this case, and have reached the conclusion that upon the main question in the case the equities are with the complainants.

This "declaration of trust," so-called, was prepared by defendant Dickinson, and it is a familiar rule that it should be most strongly construed against the party using the language. Whether this transaction is to be considered as one between principal and agent, or as a joint venture, or with reference to the statutes of this State upon the subject of "Uses and Trusts," we are of opinion that in equity and good conscience the complainants are entitled to a conveyance of their remaining interest in these lands from the defendant Dickinson. There is no other paper evidencing any different trust upon which Mr. Dickinson took the title, except that shown in the instrument above set forth.

"Trusts," in the broadest sense of the definition, embrace, not only technical trusts, but also obligations arising from numerous fiduciary relationships, such as agents, partners, bailees, etc.

The defendant Dickinson has for upwards of 30 years retained legal record title to the land in question. We are strongly impressed with the position of the complainants that, if Mr. Dickinson can be said to occupy the relation of a trustee, the nature of that trust can only be determined by the instrument in writing already set forth, and that such trust is at most a passive or simple trust. In Bispham's Principles of Equity (7th Ed.), at section 54, that author describes a "passive trust" as follows:

"A passive (or, as it is sometimes called, simple) trust has been defined to be a trust in which the property is vested in one person upon trust for another, and the nature of the trust, not being qualified by the settlor, is left to the construction of the law. In this case the *cestui que trust* has *jus habendi*, or right to be put in actual possession of the property, and *jus disponendi*, or the right to call upon the trustee to execute conveyances of the legal estate as the *cestui que trust* directs."

It is difficult to conceive of a title which is more clearly within the definition of a passive trust than is the title asserted in the instrument above set forth. There is nothing indicating the terms of the trust; no duties whatever given to the alleged trustee. Our statute relating to uses and trusts, in section 8829, 3 Comp. Laws, provides that:

" Uses and trusts, except as authorized and modified in this chapter, are abolished, and every estate and interest in lands shall be deemed a legal right, cognizable as such in the courts of law, except when otherwise provided in this title."

Section 8831 provides as follows:

"Every person who, by virtue of any grant, assignment or devise, now is, or hereafter shall be entitled to the actual possession of lands, and the receipt of the rents and profits thereof, in law or in equity, shall be deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions as his beneficial interest."

It will thus be seen that in this State passive trusts have been entirely abolished, and where a deed creates them the title passes at once to the beneficiary. *Burdeno* v. *Amperse,* 14 Mich. 91 (90 Am. Dec. 225); *Everts* v. *Everts,* 80 Mich. 222 (45 N. W. 88). In every case of a naked trust the statute itself executes the trust and places the legal estate in *cestui que trust. Ready* v. *Kearsley,* 14 Mich. 215. The statute places the entire interest, both legal and equitable, in the one beneficially entitled, or, as the expression goes, executes the use. 28 Am. & Eng. Enc. Law (2d Ed.), p. 919. Upon this subject an interesting case is that of *Loring* v. *Palmer,* 118 U. S. 321 (6 Sup. Ct. 1073). See, also, *Blake* v. *O'Neal,* 63 W. Va. 483 (61 S. E. 410, 16 L. R. A. [N. S.] 1147), and notes, making reference to the statutes of the several States; *Woodgate* v. *Fleet,* 64 N. Y. 566. In the case last cited, 64 N. Y., at page 573, referring to a certain trust deed providing, among other things, for after-born children, the court said:

"No power to receive or apply rents is given, nor are the former trusts referred to in any manner, nor is it even said that the parties of the second part shall continue to hold as before, but simply that the shares shall be held in trust; no trust being specified. Such language is, we think, insufficient to create any active trust authorized by the statute, or any but a mere passive, naked trust, to hold, under which the title would pass legally to the beneficiary."

*Syracuse Sav. Bank* v. *Holden*, 105 N. Y. 415 (11 N. E. 950). In that case, the instrument contained much broader language than the instrument we are considering, and the court said:

"A mere formal passive trust was attempted to be created which the statute executes by vesting the title in the beneficiaries."

See *Dyett* v. *Trust Co.*, 19 N. Y. Supp. 19 (affirmed in 140 N. Y. 54 [35 N. E. 341]); *Gueuthal* v. *Gueuthal*, 113 App. Div. (N. Y.) 310 (98 N. Y. Supp. 1002); *Hannig* v. *Mueller*, 82 Wis. 235 (52 N. W. 98).

A conveyance will in such a case be decreed because the nominal trust beclouds the title, and embarrasses the rights of alienation which belong to the true owner. Bispham, Principles of Equity (7th Ed.), p. 90, § 55.

We do not think that oral testimony can be resorted to, to create a trust in real estate. See section 9509, 3 Comp. Laws, and cases cited in note; *Renz* v. *Stoll*, 94 Mich. 377 (54 N. W. 276, 34 Am. St. Rep. 358); *Pierson* v. *Conley*, 95 Mich. 619 (55 N. W. 387); *Sanborn* v. *Loud*, 150 Mich. 154 (113 N. W. 309, 121 Am. St. Rep. 614). The deeds to Mr. Dickinson are quitclaim deeds. We are of opinion that the complainants are entitled to receive from Mr. Dickinson a quitclaim deed of the nine forties remaining unconveyed, subject to the terms of the lease to the Bird Iron Company, and also subject to the deed of Mr. Rothschild to Henry T. Thurber. We notice that by letter of October 24, 1906, written by Mr. Schott in be-

half of Mr. Rothschild to Mr. Cullen, Mr. Rothschild was ready to accept such a deed.

We have spent some time endeavoring to ascertain the true condition of the account between Mr. Dickinson and the Rothschilds' interest. We have reached the conclusion that, as the trust relation is now to be terminated, the case should be remanded to the Wayne circuit court, to the end that an accounting be had between the parties —complainants and defendant Dickinson—relating to the receipts and disbursements by Mr. Dickinson of royalties, etc., and relating to the value and extent of his services in purchasing, looking after, and caring for the property. We are satisfied that Mr. Dickinson's claim for reasonable compensation for services rendered for the benefit of this property should be ascertained and determined, and we are unable to determine the same from this record.

The cross-bill of defendant Dickinson against the Bird Iron Company will be dismissed, without costs, as directed by the decree of the lower court. In other respects the decree of the circuit court will be reversed, and a decree entered in this court in accordance with the terms of this opinion, with costs to the complainants against the defendant Dickinson.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.